R. W. ROBINSON

*v.*

LAURA BELLE ROBINSON, *Guardian, etc. et al.*

(CC 728)

Submitted January 14, 1948. Decided March 2, 1948.

*Graham C. Painter,* for plaintiff.

*Spilman, Thomas & Battle* and *Howard R. Klostermeyer,* amici curiae.

Fox, Judge:

This is a certified case coming to us from the Circuit Court of Kanawha County. The demurrer interposed to the plaintiff's bill was sustained by the court below, and said court, on its own motion, certified its ruling to this Court.

The facts as alleged in the bill of complaint, and upon which the ruling of the court below was made, are as follows:

On August 26, 1943, in a suit then pending in the Court of Common Pleas of Kanawha County, Laura G. Robinson was decreed a divorce, from the bonds of matrimony, from W. E. Robinson; the custody of two children, James Edward Robinson, age eleven years, and Patricia Robinson, age thirteen years, was awarded to the plaintiff in said suit; and it was ordered and decreed "that the defendant (W. E. Robinson) do pay unto said plaintiff for said support and maintenance of said children the sum of $45.00 per month, beginning as of the date when plaintiff shall have established such home separate and apart from said defendant; and that such payments shall continue until the 'further order of this court". The sum so decreed for maintenance and support was paid monthly until the death of W. E. Robinson, in October, 1944.

W. E. Robinson died testate, and by his will dated November 20, 1943, disposed of his estate in the manner

following: (1) the proceeds of a life insurance policy, in the sum of two thousand dollars, was bequeathed to his sons, R. W. Robinson and James Edward Robinson, and to his daughter Patricia Robinson, equally, and (2) "all the rest and residue of my property, real, personal and mixed wherever situate, including my business, I give, devise and bequeath to my son R. W. Robinson, charging the property included in this item II with the payment of my just debts".

An executor was not named in the will, and on its probate, on October 17, 1944, R. W. Robinson, the plaintiff herein, was, by the County Court of Kanawha County, appointed administrator with the will annexed of the said estate; and on October 8, 1945, the defendant, Laura Belle Robinson was duly appointed and qualified as guardian of the infant defendants, Patricia Robinson and James Edward Robinson.

At the date of the death of W. E. Robinson, he was the owner of certain real estate situated in the City of Charleston, consisting of a lot on Elk Road or Crescent Road, conveyed to W. E. Robinson and Mamie M. Robinson, his wife, the complete title to which became vested in W. E. Robinson on the subsequent death of his wife, under the provisions of the said deed; and a certain tract or parcel of land situated in upper Glen Elk Addition, Kanawha County, conveyed to W. E. Robinson and Mamie M. Robinson, his wife, by Paulina Smith and husband, in which complete title likewise passed to the said W. E. Robinson, upon the death of his then wife, both of said tracts of land having been conveyed to W. E. Robinson and Mamie M. Robinson, as joint tenants, with remainder in fee to the survivor.

Subsequent to the entry of the decree of divorce aforesaid, and on February 7, 1944, said W. E. Robinson executed a deed of trust on the first above mentioned tract of land, to secure the Charleston Federal Savings and Loan Association in the payment of the sum of two thousand dollars; and on the same day executed a like deed covering the second of the above mentioned tracts, to secure to the Charleston Federal Savings and Loan As-

sociation the payment of a note of fifteen hundred dollars; and it is alleged in the bill that neither of said notes has been paid in full, and that said deeds of trust have not been released. It is further alleged, that the plaintiff has been offered a fair price for one of the parcels of real estate, aforesaid, by one Thressa M. Mathes; that he has made a contract to convey same to her with a general warranty of title, subject to the approval by the Federal Housing Authority, and that said Authority has refused to approve the title to said real estate for the reason that said provision in said decree for the payment of forty-five dollars per month, aforesaid, constitutes a continuing lien on said real estate; and that unless said provision in said decree is cancelled and declared null and void, as sustaining a present lien thereon, plaintiff will be unable to dispose of said real estate at its fair value.

The bill in the cause was filed at December Rules, 1946, and on March 29, 1947, on motion of the plaintiff, the court appointed Jackson D. Altizer as guardian *ad litem* for the infant defendants; and he, as such guardian, on April 3, 1947, and in the name of his said wards, tendered and was permitted to file their joint demurrer to the plaintiff's bill setting up, as grounds therefore, the following:

(1) The decree of the Court of Common Pleas of Kanawha County, West Virginia, rendered on August 26, 1943, described in said bill of complaint, was a final decree not now appealable and by its terms and provisions the liability of the defendant in said cause, W. E. Robinson, and his estate for the maintenance and support of his infant children, Patricia Robinson and James Edward Robinson, became *res judicata* and can not be impeached or disturbed save by a bill of review or petition filed in the same court wherein it was rendered and the provision providing for the support of said infants can not be abrogated in its entirety until the youngest infant shall have attained the age of twenty-one years.

(2) The lien imposed by said final decree of the Court of Common Pleas is a valid and subsisting lien upon the real estate described in the bill of complaint and is in no sense a cloud upon

plaintiff's title to said real estate, plaintiff having acquired said real estate by devise subject to any valid liens against the same existing at the time of the death of plaintiff's testator.

(3) The bill of complaint does not state grounds for the equitable relief therein prayed and is without equity.

(4) For other reasons to be assigned at the hearing of this cause.

On June 30, 1947, the Circuit Court sustained the demurrer aforesaid, with leave to amend, and on its own motion certified its ruling to this Court, stating the questions involved in the exact language in which they were stated in points 1, 2 and 3 of the said demurrer. On September 15, 1947 we docketed the case for hearing.

It is clear that the single question here presented is whether the force and effect of the decree for maintenance and support of the infant defandants, Patricia Robinson and James Edward Robinson, entered in the divorce proceeding aforesaid, on August 26, 1943, continued beyond the death of W. E. Robinson, against whom the decree operated. It is a question with which, in its stark form, this Court has not been heretofore confronted; and one the importance of which cannot easily be minimized.

The decisions of the courts of other jurisdictions on the question are in sharp conflict. In a note affixed to the case of *Stone* v. *Bayley, Executor,* (Wash.) 134 Pac. 820, 48 L. R. A. (N. S.) 429, it is stated that "this question usually arises, however, in cases of divorce where the mother is given the custody of the child, and the father is ordered to pay her a stipulated amount for its support, the general rule being that such an obligation created by decree of court does not terminate upon the death of the father in case he dies before the child arrives at majority, but survives his death"; and in the first point of the syllabus to the main case it is held "an obligation assumed by a father in connection with a divorce, to contribute a certain amount per month towards the support of his child, the payment to continue during minority of the child, but to cease upon her earlier death, survives his death

during minority of the child". It would appear, however, that in that case the father had, in addition to his common law liability, voluntarily assumed an obligation to support his child during its minority, which seems to have been carried into the decree entered in the case. That may create a different situation from that present in the case at bar, where there is no express provision that the payments involved should continue during the minority of the child, but only until further order of the court. However, in *Miller* v. *Miller,* 64 Me. 484, custody of children was decreed to the mother, and the father was required to pay a certain sum quarterly for their support, until the further order of the court. It was there held, that, under the statute of that state, the court was authorized to make such a decree and to provide that it should continue in force after his decease, or until they were able to provide for themselves. This theory is also supported by *Murphy* v. *Moyle,* (Utah) 53 Pac. 1010; *Creyts* v. *Creyts,* (Mich) 106 N. W. 1111; *West* v. *West,* (Mich) 217 N. W. 924; *Smith* v. *Funk,* (Okla.) 284 Pac. 638; *Newman* v. *Burwell,* (Cal.) 15 Pac. (2d.) 511. However, some of these cases are apparently, based upon voluntary contracts entered into by the husband, and carried into the decree granting the divorce and custody of the children. A number of text writers support the theory that the death of the father, required by a court decree to support his children, does not necessarily terminate the allowance for their support, and state that it is generally held that his death does not terminate liability under such decree, unless otherwise provided therein, or by the agreement of the parties. See: 17 Am. Jur., Divorce and Separation, Sec. 706; Nelson Divorce and Annulment, 2nd Ed., Vol. 2, Page 100; 27 Corpus Jur. Sec. 323, page 1252; Schouler Divorce Manual, 1944 Ed., 506.

On the other hand, we have the well considered case of *Blades* v. *Szatai,* (Md.) 135 A. 841, 50 A. L. R. 232, decided in 1927, in which it is held "a father is under a common-law obligation to support his child during the latter's minority without regard to a divorce decree prescribing the amount and to whom payable, unless it orders

that the child be supported by another" and "a father's obligation to support his child during the latter's minority ceases at the father's death, no matter what the child's age may be, and his estate is not liable for payments accruing thereafter under a divorce decree". This decision is founded upon the theory that the common-law obligation of a father to support his child ceases upon his death, and that, upon that event, the interest of the child in his estate is based upon the statutory right of inheritance, where the father dies intestate, but subject, of course, to the right of the father to disinherit a child by the execution of a will; and upon the further theory that, to hold otherwise would be to disrupt the general theory of inheritance, prefer one child over another, and interfere with the common rules firmly established by statute law, governing the descent and distribution of the property of a decedent. To the same affect is the late case of *Barry* v. *Sparks,* (Mass.) 27 N. E. (2d.), 728, in which it was held, that where a decree was entered in a divorce proceeding, awarding the custody of a child to a third party, and ordering the father to support the child, then, upon the death of the mother, the divorce decree ceased to have further effect, where no provision was made for its continuance beyond the lives of the parents, and that the right of the father in relation to the custody of the child after death of divorced wife, was unaffected by the decree; and further, that upon the death of the divorced wife, the decree ordering the father to make payment to the mother to support a child whose custody was given to the third party, was no longer effective to deprive him of the right to the custody of his child, nor to relieve him from his common-law duty to support the child; and that the father then became entitled to the custody of the child, unless he was unfit, or the best interest of the child would otherwise require. In that case the wife died and the provisions of the divorce decree were held to be terminated. In the case at bar, the husband died, and by the same reasoning the effect of the decree of the divorce has terminated. The same reasoning must be applied to both situations. In the still more recent case

of *Guinta* v. *Lo Re*, (Fla.) 31 So. (2d) 704, it was held "Father's obligation under the divorce decree to pay stated amount per month for support of minor children terminated upon father's death, and decree was not enforceable against his estate for amounts accruing thereunder after death and during minority of the children". To the same effect is the case of *Carey* v. *Carey*, 163 Tenn. 486, 43 S. W. (2d) 498, although that case does no more than hold that "The common law obligation of a father to support his minor children terminates. with death; hence, a father's estate can not be charged with the support of his minor children after the date of his death". The two cases of *Mansfield* v. *Hill*, (Ore.) 107 Pac. 471, and 108 Pac. 1007, seem to hold that there must be a definite ascertainment of the amount of the decree. In the first case cited, it is held: "the provision of a decree of divorce for future monthly payments by defendant for support of wife and children, until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien on his property". In the second case, it was held that "where a divorce decree awarded judgment for attorney's fees and costs, and also provided for future monthly payments for the support of children, it became a lien from the date of docketing as to the attorney's fees and costs, but not as to the monthly payments to accrue".

The authorities in other jurisdictions being in conflict, it remains for us to determine the rule to be followed by this Court. The expressions "it is generally held" and "the weight of authority", when applied to this controversy, assist us very little. In the first place, in determining what is the weight of authority on a particular question, we are no more required to base our finding on the number of cases, pro and con, bearing on the question, than to base a finding of fact on the number of witnesses testifying as to a disputed fact in the trial of an action of law. On the vital question here involved, we should consider the reasoning employed in the several cases cited, the probable consequences involved, and the effect

of the principle adopted, on settled legal rights, including the rights of creditors of a decedent, whether based upon the decision of our courts, or the statute law of this State. With these considerations in mind, we have reached the conclusion that the principles laid down in the case of *Blades* v. *Szatai, supra,* should be applied.

In the first place, under our system of law, and going back to the common law, the obligation of a father to support his child during its minority is firmly fixed; but no one will contend that such obligation creates a lien against his estate. On his death, the only right in his estate possessed by a child is the right of inheritance under statutes existing at that time. A child has no vested right in any part of its parent's estate, and a person over the age of twenty-one years, owning property, may by will disinherit his or her child, and may dispose of property to strangers, subject only to the dower right of a wife, or husband in the real estate of a decedent, and the right to participate in the distribution of a decedent's personal estate. Code, 41-1-1; Code, 42-1-1; Code, 42-2-1; Code, 43-1-1. If we should affirm the ruling of the court below, we will have made it possible to change the course of descent and distribution, in all cases where the owner of property dies intestate, and where he or she dies testate and attempts to divide an estate among children. This, it seems to us, is a result which should be avoided. Only the owner of property who dies testate, is permitted, under our system of laws, to discriminate among children and other heirs. Our statutes on descent and distribution provide against it. In our opinion it would be grave error to adopt a principle of law which would permit it. In the case at bar, the testator has seen fit to make a discrimination among his children. Not being acquainted with the motives prompting his action, we neither approve nor condemn; but even if he were wrong in what he did, it affords no justification for a ruling on our part which would permit the establishment of a rule of law under which inequalities might arise in the future descent and distribution of estates. The very fact of the granting of numerous divorces attended by decrees for alimony

and for the support of children of a marriage, followed by remarriage of one or both of the parties, and the subsequent birth of children, brings into bold relief the difficulties which would be encountered were we to permit the children of the first marriage, through the force of a decree for support, to absorb the entire estate of a decedent, leaving children of the subsequent marriage penniless. A decree against a father for maintenance and support, adds nothing to his obligation to support his children during their minority; it only provides for the enforcement of such duty. The common law obligation already existing is one which, under all the authorities, ceases at the death of the father, and it does not seem to us logical that an order of a court for support of children, based as it must be on his common law obligation, should be given the force and effect of a judgment for payment of money, and creating a lien for money not due at his death. Of course, under such an order, accrued payments are a debt, and become a lien on the property of the person ordered to make the payments, but we do not think it becomes a lien in the sense that it may continue to accrue after the death of the person of whom payment is required. We know of no instance where a lien can be created against the estate of a person after his death. Death draws the line, and estates are settled and distributed according to the situation then existing. Conceivably, a lien such as is contended for herein could accrue over a period of fifteen or more years, during which time there would be no definite guide to determine the amount which might become due, the result of which would be to make difficult the transfer of property affected by such a lien. We think the safe and reasonable rule to apply, particularly as to the children, is to hold that a decree in a divorce suit, for the support of children, should have no effect beyond the life of the party liable therefor.

Then, the effect of the ruling of the Circuit Court on the rights of creditors should be considered. However unfortunate it may be for children, our law treats the rights of creditors as superior to any claim children may

have for support, during their minority, out of the estates of their parents. Innumerable instances might be pointed out where the entire estate of a decedent has been applied to the payment of creditors, leaving children to the mercy of their relatives, or to reliance on public authorities for support. Under our statutes and decisions, the personal estate of a decedent is made the primary fund for the payment of debts. Where the personal estate is insufficient for that purpose, the real estate of the decedent may be subjected to sale therefor. Code, 44-8-3, and 7. Should we adopt the rule contended for by the infant defendants in the case at bar, we will, in many cases, place the entire estate of a decedent beyond the reach of his creditors, and apply it to the support and maintenance of his children during their minority. We do not discuss the social question involved, but there simply is no law which would authorize such a procedure, and in addition to what has already been said, we think this feature of the discussion deserves most serious consideration.

We are not unmindful of the holding of this court in the case of *Goff* v. *Goff*, 60 W. Va. 9, 53 S. E. 769. In that case a divorce was granted to a wife, and permanent alimony decreed, payable annually. The decree for alimony was held to be a personal decree against the defendant husband, and a lien upon his real estate, even though such alimony was required to be paid in installments in the future. Also in the case of *Hale* v. *Hale*, 108 W. Va. 337, 150 S. E. 748, it was held that under the then existing statute "where a dissolution of marriage is decreed upon the application of a wife, the court may provide for alimony during the life of the wife". In that case the decree for alimony was for two hundred dollars per month "until further order of the court". In *Goff* v. *Goff*, *supra*, the order was that the wife be paid twelve hundred dollars annually for alimony "during the joint lives of the parties". Evidently it was not then believed that payments of unmatured alimony could be enforced out of the estate of a decedent. In the *Hale* case it was held that as a general rule the income of the husband should be

taken as the basis for decreeing alimony, but recognized exceptions where there was large holdings of real estate, not income producing, in which the wife had an inchoate right of dower. It will be noted that in both the *Goff* and *Hale* cases, the holdings were based upon a decree for alimony, which presents a situation different from that existing where children are involved. Marriage creates in the wife the inchoate right of dower, and the right to participate in the distribution of her husband's personal estate, rights of which she can not be deprived, so long as the marriage relationship continues. But a decree of divorce from the bonds of matrimony ends that relationship and ends her right of dower and distribution, and this is always considered as a basis for alimony, in addition to that of the duty of a husband to support his wife. The first of these considerations was given great weight in the *Hale* case. There would be no great inconsistency in holding. with the theory expressed in the *Hale* case, (although that question is not before the Court and we reserve decision thereon) and in adopting a different holding with respect to children.

But in view of our more recent decisions on the question, we doubt whether the rule laid down in the *Goff* and *Hale* cases should be applied as the settled law of this State, in respect to allowing liens to accrue after the death of a decedent against whom a decree for the payment of money in installments has been entered. We think it is settled that as to accrued alimony, the rule of the *Goff* case stands as established law; but we have not gone farther. In *Holcomb* v. *Holcomb,* 122 W. Va. 293, 8 S. E. (2d) 889, we held: "Matured installments of permanent alimony stand as decretal judgments against the man charged therewith, and constitute a lien on his real estate under Code, 38-3-6, which makes every judgment for money a lien on the real estate of the debtor"; and we also held that "A woman who has been divorced from her former husband and awarded alimony by decree against him, may maintain a suit in chancery to enforce the lien of the decree respecting matured installments unpaid". It has never been held, so far as we know, that any char-

acter of proceeding could be maintained to collect or secure unmatured installments of alimony, nor such installments on a decree for the support of children. If there has been no fraud in the procurement of a decree for alimony, accrued installments thereof, are assignable and can not be cancelled. *Biggs* v. *Biggs,* 117 W. Va. 471, 185 S. E. 857; *Harman* v. *Harman,* 120 W. Va. 199, 196 S. E. 361. In *Korczyk* v. *Solonka,* 130 W. Va. 211, 42 S. E. (2d) 814, it was held: "matured installments provided for in a decree ordering the payment of specified monthly sums by a husband to his wife for the maintenance and support of their children, stand as decretal judgments against the man charged therewith and constitutes a lien on his real estate under Code, 38-3-6". So it is, that as to both a decree for alimony, and a decree to a wife for the support of her children, we have, by strong implication, limited recovery to matured or accrued installments, and have also held that a suit could be maintained outside the divorce suits to enforce collection of matured payments.

But it may be said that our holding operates, in effect, to set aside a decree of a court of competent jurisdiction, not appealed from, and now final. We do not believe that this contention, if made, can be sustained. The decree of August 26, 1943, was a personal decree against W. E. Robinson, to be performed by him, and based on a personal and legal duty to support his children. By that decree he was required to pay money, and, under Code, 38-3-6, it created a lien upon his real estate. But it was, supposedly, based, on his personal earning power, and not final in the sense that it could not be changed, for, by its terms, it operated only "until the further order of the court". If a change were to be made in the decree, it was, presumably, intended that it would be made in the lifetime of the person against whom it was rendered, and not after his death, when it could only affect the descent and distribution of his estate. We are not setting aside the decree of August 26, 1943, decreeing payments, but uphold it to the extent of payments that had matured thereon, at the date of the death of W. E. Robinson. We are merely interpreting its intended meaning, force and

effect, at the time it was entered. It is not uncommon that litigation develops over a judgment or decree which has become final, and where a dispute has arisen over its interpretation and effect. Such a question is presented on this certification, and no setting aside or vacating a final decree is involved.

To sum up the whole matter, we are of the opinion that a decree in a divorce suit against a father, for the payment of money for the support of his children, becomes ineffective on his death; and that in the ordinary case, the same rule should apply to an alimony decree to a wife, though conceding that under the rule of *Hale* v. *Hale, supra,* situations may arise under which the Court would be warranted in decreeing alimony for the life of the wife. Holding these views, we reverse the ruling of the Circuit Court of Kanawha County, and remand the cause to that court for further proceedings.

> *Ruling reversed,*
> *cause remanded.*

HAYMOND, JUDGE, dissenting:

Believing that the conclusion reached by the majority that a judgment for the payment of a monthly sum of $45.00 by a father, the judgment debtor, for the support of two of his infant children until the further order of the court which pronounced it, becomes ineffective and ceases to be enforceable upon the death of the father, as to any installments that should subsequently accrue, introduces a dangerous and unwarranted innovation, and a most undesirable anomaly, in the law of judgments in this State, I respectfully but earnestly record my dissent.

The pertinent provision of the final decree of the Court of Common Pleas of Kanawha County, here under consideration, is in these words:

"And it appearing to the Court that the defendant has voluntarily agreed to pay the sum of $45.00 per month for the support and maintenance of said children, beginning as of the time when plaintiff shall have established a home for herself and said children separate and apart from the defendant; it is ADJUDGED, ORDERED and

DECREED that the defendant do pay unto said plaintiff for said support and maintenance of said children the sum of $45.00 per month, beginning as of the date when plaintiff shall have established such home separate and apart from said defendant; and that such payments shall continue until the further order of this Court."

By the statutes of this State, Code, 1931, 38-3-1, and 38-3-2, the foregoing decree of the Court of Common Pleas of Kanawha County which ordered the father, W. E. Robinson, to "pay unto said plaintiff for said support and maintenance of said children the sum of $45.00 per month, * * *; and that such payments shall continue until the further order of this Court", being a decree which required the payment of money, was a judgment and as such, by virtue of Code, 1931, 38-3-6, referred to in the majority opinion, became a valid lien upon the real estate of the defendant to which he is or becomes possessed or entitled at or after the date of such judgment, or, as the judgment in question was rendered in court, at or after the commencement of the term at which it was rendered. This is admitted by the majority. The lien having arisen by virtue of the judgment it continues until the judgment is discharged in some legal manner. *Renick* v. *Ludington,* 14 W. Va. 367, 381, 38 L. R. A. 294n; *McClaskey v. O'Brien,* 16 W. Va. 791. The judgment is a lien by force of the statute. It does not cease to be a lien because of the death of either party and it may be enforced in equity without revival. *Laidley v. Reynolds,* 58 W. Va. 418, 52 S. E. 405; *Maxwell v. Leeson,* 50 W. Va. 361, 40 S. E. 420, 88 Am. St. Rep. 875. The cases just cited, which have been the law in this jurisdiction without question for many years, say nothing about the termination of the force or the effect of a judgment upon the death of the judgment debtor, and furnish no basis for, but are in irreconcilable conflict with, the statement in the final portion of the syllabus prepared by the majority in this case that the decree becomes a lien upon the real estate of the debtor, a husband, "which may be enforced as the required payments accrue or mature, during the lifetime of the husband; but may not accrue or mature, or be enforced against the estate

of the husband, real or personal, after his death." The application of the statute, as made by the majority, is not supported by any valid reason or the citation of any persuasive authority and, in my opinion, is wholly at variance with the holdings of this Court in the cases to which I have just referred.

The reasoning upon which the majority bases the decision that the judgment of the court of common pleas loses its force and effect as to installments to accrue in the future, upon the death of the judgment debtor, the father of the infant children of the parties in the divorce suit, is entirely unsound. It appears to result from the failure of the majority to recognize the clear and valid distinction between the duty of the father to support his children, which, in the absence of any adjudication, terminates with his death, and the effect of the judgment, based upon that duty at the time it was rendered by a court of competent jurisdiction in his lifetime, which by all the former holdings of this Court does not end or terminate by the death of any party to the judgment.

In this case, as in any other case, the claim upon which the judgment is based, whether it arises from contract or tort, and whatever its character, when judgment is rendered, loses its identity and becomes merged in the judgment. A note, or an open account, or a claim for personal injuries, involved in any proceeding, once it is reduced to judgment, no longer retains its original identity but is merged and converted into the judgment. Generally the original status of the claim is no longer important or material. It is absorbed in the judgment rendered upon it and thereafter it is the judgment, and the judgment only, that affects and determines the rights of the parties. See *Fisher's Executors* v. *Hartley*, 48 W. Va. 339, 37 S. E. 578; 54 L. R. A. 215, 86 Am. St. Rep. 39; 30 Am. Jur. Judgments, sections 154 and 155. That result occurs when a judgment is entered upon a claim which sounds in tort. I think it would not be seriously contended in this, or any other, jurisdiction that a judgment based on a claim for personal injuries, which claim before judgment at common law

ends with the death of the tort feasor, would lose its force and effect and could not be enforced or collected with its accruing interest after the death of the defendant. A judgment against a tort feasor rendered by a court of competent jurisdiction, by universal recognition, survives his death and continues in full force and effect as a judgment and as a charge against his estate until it is satisfied or discharged in some legal manner. I can see no distinction, in law or logic, between a judgment based upon a claim in tort in its effect upon the estate of the defendant tort feasor after his death and the decree of the court of common pleas which the majority concedes is a judgment and a lien upon the real estate of the debtor, which admittedly has not been satisfied or discharged in any legal manner, and which, as to installments to accrue after his death, by the decision of the majority, never will or can be so satisfied or discharged by payment out of his estate. The decision of the majority simply, and, I think, summarily and without advancing any reason which appears to me to be either sound or persuasive, ignores the holdings of the above cited cases to the effect that a judgment as such is not affected by the death of a party to it, and reaches a conclusion which is entirely inconsistent with the principles announced, and unqualifiedly contradicts the pronouncements made, in each of them.

That the judgment involved in this case applies to installments subsequently to accrue does not alter its character or impair its effect as a valid judgment. This Court has held in an unbroken line of cases, until the present decision, that a valid judgment covers payments to accrue after the entry of the judgment and that a judgment which operates upon payments subsequently accruing is a valid lien upon the real estate of the defendant in the judgment. *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083; *Smith* v. *Smith,* 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149; *Hale* v. *Hale,* 108 W. Va. 337, 150 S. E. 748; *Biggs* v. *Biggs,* 117 W. Va. 471, 185 S. E. 857; *Harman* v. *Harman,* 120 W. Va. 199, 196 S. E. 361; *Holcomb* v. *Holcomb,* 122 W. Va. 293, 8 S. E. 2d 889; *Korczyk* v. *Solonka,* 130 W. Va. 211, 42 S. E. 2d 814. In all the cases just cited, except the case

of *Korczyk* v. *Solonka,* 130 W. Va. 211, 42 S. E. 2d 814, the judgments involved were for alimony. In the *Korczyk* case the judgment was for money awarded for support and maintenance of children of the judgment debtor. In principle, however, with respect to the validity and the force and the effect of the judgment, as a judgment, there is no distinction, and the labored effort of the majority to create such distinction concerning the effect of the judgment due to the difference between the duty of a husband to support his wife by the payment of alimony because she may have been entitled to dower in his estate after his death, and the duty of a father to support his infant children, a duty which of itself terminates with his death, is obviously unsound and, it seems to me, utterly devoid of merit and entirely lacking in persuasiveness. The controlling question in this case is not the duty of the father to support his children but the effect of the judgment which required him to do so in a specified manner and amount until the further order of the court.

Nothing appears in any of the cases last cited to indicate that the judgment under consideration in any of them should cease to be valid or enforceable, as to future installments, upon the death of any of the judgment debtors. On the contrary, in the case of *Hale* v. *Hale,* 108 W. Va. 337, 150 S. E. 748, this Court, in considering the power of the chancellor in a suit for divorce under the statute then in effect, Code, 1923, Chapter 64, Section 11, to decree as he "shall deem expedient, concerning the estate and maintenance of the parties or either of them, and the care, custody and maintenance of the minor children", said: "We think this is of sufficient breadth to warrant a requirement by the trial court that permanent alimony be paid out of a husband's estate after his death, when, in the chancellor's opinion, such course is just and right." Though the present statute, Code, 1931, 48-2-15, as amended by Chapter 35, Acts of the Legislature of 1935, Regular Session, modified Code, 1923, Chapter 64, Section 11, in several particulars, the language of the present statute, with respect to the power of the court in a suit for divorce to decree concerning the estate of the parties,

or either of them, as it shall deem expedient, and the maintenance of the minor children, or any of them, is in substance the same, and just as comprehensive, as that of the statute quoted and considered by the Court in the *Hale* case. It is clear that the passage quoted from the opinion in that case means that the decree which required the husband to pay the wife, during her life, permanent alimony to accrue at the rate of $200.00 per month, subject to the future order of the court, was a judgment which would continue to be effective and enforceable as a valid judgment after the death of the judgment debtor and until terminated or modified, as it could be, at any time for sufficient cause, as to the installments to accrue in the future, by the court which pronounced it. In principle, the same effect should, in my opinion, be accorded the judgment for the support of the infant children of the deceased parent, W. E. Robinson, to accrue at the rate of $45.00 per month after his death, until it should be terminated or modified, as to installments to accrue in the future, upon a showing of a change in circumstances, such as the death of the parent, or any other sufficient reason which would justify such action by the court of common pleas which entered the judgment. *Holcomb* v. *Holcomb,* 122 W. Va. 293, 8 S. E. 2d 889; *Biggs* v. *Biggs,* 117 W. Va. 471, 185 S. E. 857; *Smith* v. *Smith,* 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149; Code, 1931, 48-2-15, as amended by Chapter 35, Acts of the Legislature, 1935, Regular Session. Until modified or terminated by that court, which has not been done, the judgment, in my opinion, remains in full force and effect.

The majority opinion refers to or discusses all the cases dealing with alimony and support and maintenance of minor children which I have cited except the case of *Smith* v. *Smith,* 81 W. Va. 761, 95 S. E. 199, 8 A. L. R. 1149. Instead of following the reasoning of those cases and reaching a conclusion in harmony with their holdings, however, it summarily adopts an entirely different and utterly inconsistent view which, I think, necessarily rejects those prior decisions of this Court and, without so stating in express terms, in effect overrules all of them.

I can not consent to any such unusual, unsound and wholly unnecessary result.

The unsoundness of the conclusion reached by the majority becomes manifest when it is examined in the light of the heretofore unquestioned prior decisions of this Court to which I have referred. But that is not all. Much more could, and some more should, be said to demonstrate that the decision of the majority is not based on sound reason and is contrary to the view expressed by recognized text writers and the clearly established weight of judicial authority in other jurisdictions. As stated in the majority opinion, there is some conflict in the decided cases in which the precise question here involved has been considered; but, in the conflict, the decisions which hold that a decree requiring the payment by the father of designated installments of money for the support of a minor child until the further order of the court continues in force and effect after his death and during the minority of the child, distinctly outnumber the few cases that adopt the opposite view. The decided weight of authority, and most of the well reasoned decisions in other jurisdictions, are to the effect that a decree in a suit for divorce which requires a father to pay a stated sum periodically for the support of his minor child until the further order of the court is not terminated by his death, before the child attains its majority, but that the obligation created by the decree survives the death of the parent. In such instance the general rule is stated to be that the obligation created by the decree of the court does not necessarily terminate upon the death of the father, if he dies before the child arrives at majority, but survives his death.

Some of the cases which recognize and adhere to this principle are: *Stone* v. *Bayley, Executor,* 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429; *Miller* v. *Miller,* 64 Me. 484; *Murphy* v. *Moyle,* 17 Utah 113, 53 P. 1010, 70 Am. St. Rep. 767; *Creyts* v. *Creyts,* 143 Mich. 375, 106 N. W. 1111, 114 Am. St. Rep. 656; *Smith* v. *Funk,* 141 Okla. 188, 284 P. 638; *Newman* v. *Burwell,* 216 Cal. 608, 15 P. 2d 511; *Mansfield* v. *Hill,* 56 Or. 400, 107 P. 471, 108 P. 1007. To the

same effect are the statements of the rule in a number of recognized treatises and texts which deal with the subject of decrees for support in divorce proceedings.

In 27 C. J. S., Divorce, Section 323, Paragraph d, it is said that, in the absence of statutory inhibition, it is the general rule that provisions for the support of a child do not necessarily terminate upon the death of the father and that whether the children are entitled to support money depends upon the nature and the terms of the decree. In 17 Am. Jur., Divorce and Separation, Section 708, the statement is that the weight of the adjudicated authorities is to the effect that the liability of the father is not necessarily terminated by his death, but may survive against his estate as to subsequently accruing installments, that there is no sound reason why the estate of the father should not be charged with the obligation to provide support for his minor children after his death, and that a provision in a decree of divorce against a husband for the payment of a certain sum monthly, until the further order of the court, for the support of his infant child creates an obligation which is not discharged by his death.

In Nelson on Divorce and Annulment, Second Edition, Vol. II, Chapter 14, Section 14.91, this language appears: "The allowance for support of a child is ordinarily limited to his or her minority. Death of the father required to support his children does not necessarily terminate the allowance made for their support, and it is generally held that his death does not terminate his liability unless otherwise provided by the divorce decree or by the agreement of the parents. If a certain amount is required to be paid each month for support of a child until the further order of the court, and such sums are made by the decree a lien on the father's property, the allowance has been held not to terminate on the death of the father."

In Schouler, Divorce Manual, Section 347, Paragraph C, Page 506, the author uses this language: "At common law a father was under no obligation to provide for the support of a child after his death. This, however, does not

necessarily mean that provisions in the decree for the support of a child terminate when he dies. It has been said that, when through the fault of the father his family is broken up and his children become in one sense the wards of the court, he may be compelled, if of sufficient ability, to give security for the support of his children that shall be binding upon his estate or provisions may be enforced by the court. There are, therefore, decisions to the effect that upon the death of the father the provisions of the decree for the support of the child do not necessarily end but may be enforced against his estate. Likewise the obligation of the father to support his child if based on an agreement between the parents may continue if he has died. In the absence of contract, however, in some of the jurisdictions under the statutes, the liability of the father ceases upon his death." As authority for the last sentence in the passage just quoted the author cites *Carey* v. *Carey,* 163 Tenn. 486, 43 S. W. 2d 498, and *Blades* v. *Szatai,* 151 Md. 644, 135 A. 841, the latter of which cases, which I shall discuss later, is the principal authority upon which the conclusion reached by the majority seems to be based.

I now refer to a few of the many cases, some of which I have cited, in other jurisdictions which hold that a decree, rendered under statutes which are substantially similar to the statute of this State, for the payment of money for the support of a minor child, to accrue in installments, survives the death of the father if he dies before the child comes of age.

In *Murphy* v. *Moyle,* 17 Utah 113, 53 P. 1010, 70 Am. St. Rep. 767, the Supreme Court of that State said: "A decree made in a divorce suit, under section 2606, Comp. Laws 1888, that the mother shall have the care and custody of the minor children, and that the father shall pay a certain sum monthly towards their support during their minority, is not discharged by his death, but its performance may be enforced out of his estate, for the time of minority." In that case there was no agreement upon the part of the father to pay the support money decreed. The court based its decision upon the decree of the trial court and held it

to be a lien upon designated property of the father. With respect to the lien of the original decree and the modified decree in the divorce suit the Court said: "Testing, therefore, the original and modified decrees by the terms of the statute, it is evident that they were both authorized, and created an obligation to pay and a lien on the property described in the modified decree as security for payment in accordance with the terms of the decrees, which obligation and lien continued in force after the death of the deceased, and bound his estate. Such lien was subject to foreclosure for failure to make payment of the sum stipulated at any time during the minority of the child. It could be foreclosed the same as any other lien for the purpose of enforcing payment."

In *Creyts* v. *Creyts*, 143 Mich. 375, 106 N. W. 1111, 114 Am. St. Rep. 656, a decree entered by the trial court in a divorce suit provided, among other things, that the husband should pay the sum of $10.00 per month for the support of an infant child until the further order of the court. The father paid this sum until his death. The petition of the wife charged, in part, that the death of the husband did not interrupt or suspend her right to the sum of $10.00 per month which was payable until the infant reached her majority and that the administratrix of the deceased husband should be required to make such payments, and asked that the present worth of the payments prayed for by the petitioner be determined and ordered by the court to be paid by the administratrix. In the opinion the Supreme Court of Michigan employs this language: "Under our statute, which authorizes the court to make the decree a charge upon the property, and to change and alter the decree from time to time, in the interest of justice, (Comp. Laws, Sections 8640, 8641), we are of the opinion that, where the rights of bona fide holders have not intervened, the court may alter, amend, enlarge, or diminish the decree, as the necessities of the one and the ability of the other party may require, and that it may protect the child by making the decree a charge upon property to prevent its dissipation, and that the power is not determined by

the death of the husband." In that case there was no agreement between the parties concerning the payment of any money for the support of the child.

In *Mansfield* v. *Hill,* 56 Or. 400, 107 P. 471, the Supreme Court of Oregon held in head note 10: "The provision in a decree of divorce for future monthly payments for support and education of children, as authorized by B. & C. Comp. Section 513, creates a personal liability of defendant, which does not terminate at his death, but may be enforced against his estate." In that case also there was no agreement between the parties on that subject.

In *Miller* v. *Miller,* 64 Me. 484, the Supreme Judicial Court of Maine held: "A decree made in a divorce suit that the mother shall have the care and custody of her minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of the court, is not discharged by his death; and a bond given to secure performance of such a decree is binding upon the surety notwithstanding the death of the principal obligor." In the opinion these statements appear:

"The question is whether a decree of this court, made in a divorce suit, that the mother shall have the care and custody of minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of the court, is discharged by the father's death.

"We think it is not. The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. * * *.

"We do not controvert the position of the learned counsel for the defendant that, by the rules of the common law, a father is under no legal obligation to provide for the support of his children after his death. It may be that he can disinherit them and leave them to be supported by others. * * *.

"But we think such can only be the law when the family relations remain intact, and when there is no great danger that such an arbitrary power will be exercised. We think that when, through the fault of the father, his family is broken up, and his children become in one sense the wards of the court, this power is taken from him, and he may be compelled, if of sufficient ability, to give security for the support of his children that shall be binding upon his estate.

"Certainly such ought to be the law. * * *. We think it is the law. As before remarked, the statute conferring jurisdiction in such cases is very broad. It declares that the court may make such decree concerning the care, custody, and support of the minor children of the parties, and alter it from time to time, 'as circumstances require,' and employ any compulsory process they deem proper." Though the action was against the surety on the bond, the effect of the bond depended upon the power of the court to render the decree and the force and the binding effect of the decree upon the estate of the deceased father after his death. The basic liability for the payment of the support awarded by the decree was in no sense dependent upon any agreement of the husband to its entry. The bond was given as security for the involuntary obligation imposed by the decree and, without that obligation, created by the decree, the security would have been of no force or virtue. The surety was liable on the bond solely because the principal was bound by the decree.

In *Stone* v. *Bayley*, 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429, the Supreme Court of Washington said in head note 2: "The court has power, in a divorce case, to make a provision for alimony and the support of a minor child that will survive, and may be enforced out of the estate of the party charged, in view of Rem. & Bal. Code, Section 989, providing that, in granting a divorce, the court may make such disposition of the property as may be just and equitable, and shall make provision for the support of the minor children of the marriage." The parties, pending the suit, entered into a written agreement

by which, among other things, the husband agreed to pay to the wife, for the support of their minor child, $25.00 per month during its minority, such payments to cease upon its earlier death. In the decree which granted a divorce to the wife and awarded her the custody of the child no provision was made for its support. Upon the death of the husband no further payments required by the agreement were made for the support of the child. The wife, after presenting a claim for the installments which had accrued since his death to the executor of his estate, payment of which was refused, brought suit against the executor to enforce payment of the claim out of the estate of the deceased husband. The trial court entered judgment in favor of the plaintiff for the payment of the claim. The Supreme Court affirmed the judgment and in its opinion said: "Such a contract is no more a fraud of the heirs than if the same provisions were found in a will. No heir, as such, has a vested interest in an estate during the life of the owner. No one is heir to the living. The husband in this case made the contract while his property was his own, and there is no more reason why the contract should not create a valid claim against his estate than in case of any other contract which he might have made. It is no more in fraud of creditors than any other contract providing for future payments would have been. * * *.

"We are convinced that it was the intention of the parties that the obligation of this contract should survive the husband's death during the life and minority of the child. We are further convinced that, under our statute, a similar provision, if contained in the decree of divorce would have been valid and surviving, and that neither such a decree nor such a contract contravenes any principle of public policy."

In the more recent case of *Newman* v. *Burwell,* 216 Cal. 608, 15 P. 2d 512, there was a property settlement between a husband and a wife which was confirmed by a decree entered in a suit for divorce in which they were parties and pursuant to the settlement the husband was required by the decree to pay to the wife, until the further order of the court, $50.00 per month for the support of the child.

While in default in payment of matured installments the father died. His executrices having refused payment of the claim, the wife brought suit against them to recover the installments which had matured at the death of the father and for $7,400.00 which represented the maximum amount necessary to pay the monthly installments which had accrued since the father's death and which would continue to accrue during the minority of the child. From a judgment for the defendants the wife appealed. The Supreme Court of California reversed the judgment of the trial court and in the opinion it uses this language which is peculiarly applicable to the case at bar:

"The common-law rule that the liability of the father to support his child was terminated by his death, and no claim therefor survived against his estate, was applicable to a divorce *a mensa et thoro* which did not finally terminate the marriage relation, but merely effected a separation without disturbing the marital rights and obligations. 9 R. C. L. 484, Sec. 300; 19 C. J. 360, Sec. 822 (5); *Murphy* v. *Moyle, supra; Stone* v. *Bayley, supra.* However, under modern conditions, the weight of the adjudicated cases is to the effect that such liability of the father is not necessarily terminated by his death but may survive against his estate as to subsequently accruing payments. *Estate of Smith,* 200 Cal. 654, 659, 254 P. 567, 569; *Myers* v. *Harrington,* 70 Cal. App. 680, 234 P. 412; *Miller* v. *Miller,* 64 Me. 484; *Stone* v. *Bayley, supra; Murphy* v. *Moyle, supra; Gamsburg* v. *Garbarsky, supra;* 9 R. C. L. 301, Sec. 300; 19 C. J. 360, Sec. 822 (5).

"Without narrating the facts and discussing the holdings in each of the several cases just above cited, suffice it to say that they indubitably established that a father's obligation to support his minor child, which obligation is fixed by a property settlement agreement and confirmed by a divorce decree, survives his death and becomes a charge against his estate for all sums accruing thereunder during the child's minority, and that an action, similar to the one here instituted, may be brought to establish the same as a valid and subsisting claim against the father's estate. It is true that in certain of the cited cases

the father's obligation was to pay a designated sum monthly *during the minority* of the child, thus tending to irrefutably indicate that it was to survive the father, whereas the obligation here imposed was to continue 'until further order of court.' However, these same authorities recognize that in the absence of an expressed intention to limit such obligation to the lifetime of the father, the same will, and does, survive his death even under a decree imposing the same until 'further order of the court.' *Stone* v. *Bayley, supra,* page 822 of 134 P., 75 Wash. 184; *Myers* v. *Harrington, supra,* page 685 of 70 Cal. App., 234 P. 412; *Miller* v. *Miller, supra.* In the case last cited the decree merely provided, as here, for the father's payment of a specified sum quarterly 'till the further order of court', and it was held that such obligation continued after his death and during the minority of the children. And rightfully so, for it is the solemn duty of every father to support his children during their minority, and if he fails to do so, every principle of justice demands that they be thus supported out of his estate.

"It is also true that in certain of the cases above cited the divorce decree, in addition to fixing the father's obligation toward his minor children, imposed a lien upon his property to secure the payment of the sums due thereunder. However, the cases recognize that a distinction founded in the giving or requiring of security can rest on no sound basis, inasmuch as the provision for security is a difference merely in circumstance, and not in principle. * * *.

"* * *. It is conceivable that in some cases the installments of support money accruing after the father's demise, may aggregate sufficient to consume his entire estate, thus leaving nothing upon which a testamentary disposition might act. However, the same argument is equally applicable to a secured obligation for the payment of support money. We found no difficulty and expressed no hesitancy in holding the latter type of obligation to be a continuing one in the *Estate of Smith, supra,* recently decided. Moreover, it is equally conceivable that

a conclusion contrary to the one herein announced might well result in certain cases in the minor child becoming a public charge. It would seem that the well-being of the child is at least as important as the father's power of testamentary disposition."

As already stated, the majority opinion refers to and briefly discusses the cases of *Stone* v. *Bayley,* 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429; and *Miller* v. *Miller,* 64 Me. 484. It also cites the cases of *Murphy* v. *Moyle,* 17 Utah 113, 53 P. 1010, 70 Am. St. Rep. 767; *Creyts* v. *Creyts,* 143 Mich. 375, 106 N. W. 1111, 114 Am. St. Rep. 656; *West* v. *West,* 241 Mich. 679, 217 N. W. 924; *Smith* v. *Funk,* 141 Okla. 188, 284 P. 638; and *Newman* v. *Burwell,* 216 Cal. 608, 15 P. 2d 511. It gives slight consideration, however, to the reasoning upon which those decisions are based, the soundness of which is demonstrated by the foregoing quotations which I have used from some of them. Those cases were decided under statutory provisions which appear to be substantially similar to and no more comprehensive than those of Section 15, Article 2, Chapter 48, Code, 1931, as amended by Chapter 35, Acts of the Legislature of 1935, Regular Session; but the majority accords no persuasive or decisive force or effect to the conclusions reached in any of them.

As to the last above mentioned six cases which the majority opinion cites, it summarily passes them by with the comment that "some of these cases are apparently, based upon voluntary contracts entered into by the husband, and carried into the decree granting the divorce and custody of the children." That feature, however, obviously does not distinguish any of them from the case at bar, for, as the provision of the decree of the court of common pleas, quoted earlier in this dissent, expressly states, the voluntary agreement of the husband and father to pay the support money of $45.00 per month is recited in, and is "carried into", the decree of that court. The existence of an agreement in the case at bar, and in those of the cited cases in which an agreement was entered into by the husband, is, in my judgment, of no importance. As I have endeavored to show, the basic reason for the

survival of the obligation against the estate of the deceased father to pay the installments of support money accruing after his death is the force and the effect of the decree 'of the court which emanates from its power, under the statute, to pronounce it, and which, by the statutes of this State, is a judgment, rather than the force and the effect of the agreement; and the obligation of the decree would arise and persist whether or not any such agreement existed. This position is supported by the above mentioned cases dealing with the question, which are cited and briefly discussed in the majority opinion, as reference to the quotations from the opinions of some of them hereinabove set forth clearly indicates. The majority should not lightly cast aside those cases, as it apparently does, merely because some of them involve an agreement which was "carried into the decree."

In arriving at the decision reached in this case the majority opinion appears to give controlling effect to four cases from other jurisdictions. These cases are *Blades* v. *Szatai,* 151 Md. 644, 135 A. 841, 50 A. L. R. 232; *Barry* v. *Sparks,* 306 Mass. 151, 27 N. E. 2d 728; *Guinta* v. *Lo Re,* 159 Fla. 448, 31 S. 2d 704; and *Carey* v. *Carey,* 163 Tenn. 486, 43 S. W. 2d 498. The *Barry* case and the *Carey* case, in my opinion, are clearly distinguishable from the case at bar.

In the *Barry* case the decree granted the wife a divorce and awarded the custody of the minor child to a third person, its maternal grandmother, and provided that the father should pay the wife $11.00 per week for its support until the further order of the court. A little more than a year after the decree became effective the wife died. Several years later the grandmother sued the father to recover for board and lodging for the period from a few weeks before the death of the wife to the time of the institution of the suit. The defendant made no payments of support after the death of the wife. The trial court entered judgment for the defendant. Upon review by the Supreme Judicial Court of Massachusetts, the judgment of the trial court and the judgment of an intermediate appellate court were reversed on several

grounds. In the opinion the Court said: "We are here concerned with the effect on the common law rights and obligations of a father when, by a decree entered in divorce proceedings, custody of his child is given to a third party, and payments by the father for the support of the child are ordered. * * *. So long as such a decree is in effect a father does not have the right to the custody of his child and is not under the obligation to provide for its support other than to make the payments for its support ordered by the decree. * * *. But when such a decree has been entered, upon the death of one of the parents (in the present case, the mother) the divorce decree ceases to have any further continuing effect, * * *, at least when, as here, the decree makes no provision for its continuance beyond the lives of the parents. * * *. When the divorced wife of the defendant died there was no longer any effective decree of court depriving the father of the custody of the child and relieving him from the common law duty to support it. * * *. The defendant's common law right to the custody of his child revived and his obligation to support it again arose when the divorce decree became ineffective upon the death of the mother." In that case the father did not die and no issue arose as to the continuance of the obligation of supporting the child under a decree against his estate after his death. Though the reasoning of the Court would seem to indicate that as the divorce decree became ineffective upon the death of the wife the effect of the decree for the payments of support by the husband would likewise have ended at his death, that question was not before the Court and of course was not decided in that case.

In the *Carey* case, the wife obtained a decree of absolute divorce from the husband. The decree gave her $3,000.00 alimony and the custody and the control of their two infant daughters but it made no provision for their support. Subsequently the husband died and the daughters sued his executors, the devisees under his will, and his widow to whom he was married after the divorce, "to assert and establish property rights in the estate".

The trial chancellor dismissed the bill of complaint. Upon review by the Supreme Court of Tennessee the judgment of dismissal was affirmed. Unlike the case at bar there was no decree or adjudication against the father for the support of the children. In the opinion the Court said: "There are some authorities which hold that when the decree awarding custody of a child to its mother makes definite provision for support by the father, decreeing a definite periodical payment, the obligation so fixed survives the death of the father as a charge upon his estate. *Stone* v. *Bayley*, 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429, and cases cited in note; Schouler, Marriage, Divorce, etc. (6 Ed.), vol. 2, sec. 1916. But none has been found which would extend the obligation for support beyond the death of the father, when not resting upon contract or definite adjudication. The common-law obligation terminates with the death of the parent." Of course, the last sentence contains a correct statement, in the absence of a decree imposing the obligation of support which by virtue of the decree would survive against his estate after his death; but that statement has no application to the question of the effect of the decree which arises in the case at bar.

The *Blades* case and the *Guinta* case, however, seem to be applicable to the case at bar, and they adopt the minority rule. The decision in each case was by a divided Court. In the *Blades* case, one judge of the five judge Court dissented; and in the *Guinta* case four judges concurred in the majority opinion and the chief justice and one judge dissented. Those two cases, adhered to by the majority, in the face of the applicable statutes of this State, are contrary to the prior decisions of this Court, the views expressed in standard treatises and texts and the clear weight of authority of decisions of the Courts of last resort in other jurisdictions, to all of which I have referred and from a number of which I have quoted at length; and to me they appear to constitute the feeble and ephemeral legal foundation upon which the conclusion of the majority in this case is based. It has based its holding, not upon the rock of sound judicial pro-

nouncements of this Court, and numerous courts of recognized standing in other jurisdictions, which constitute the decided weight of authority, but upon the sands of a small minority which is divided within its own ranks.

Among the reasons advanced in the majority opinion, in support of the decision, two call for comment. These are the arguments, apparently suggested by the *Blake* case, which discusses the right of a father to make testamentary disposition of his estate, that the survival of the decree for the payment of support against the estate of the father would tend to "change the course of descent and distribution", and also tend to "place the entire estate of a decedent beyond the reach of his creditors". To me each argument appears to be utterly groundless. A judgment of a court of competent jurisdiction in favor of a child against his parent, based upon any valid or recoverable claim, whatever may be its character, creates in law the relation of judgment creditor and judgment debtor between them which merits the same legal sanction and protection as that which arises when a judgment for money is rendered between any other persons. If a father with many dependent children against whom a valid judgment is entered in favor of one of them, or in favor of a stranger, for a sum which will consume or take from him all his property and estate, should will his property to his children equally, or in unequal shares, or die intestate, with the judgment unsatisfied, his children can not hold his property except subject to the judgment. Before they can have the property the judgment must be paid. This ill fortune is common to every insolvent or bankrupt father whose children, because of his financial misfortune, take nothing which he possesses by the course of descent and distribution, or by testamentary disposition. In such instance the course of descent and distribution is not changed nor is his power of testamentary disposition destroyed; satisfaction of the judgment simply consumes the estate. The course of descent and distribution is in no wise altered but there is no property as to which it can operate. When there is nothing to descend or to distribute there can be no de-

scent or distribution. The same unfortunate fate overtakes creditors whose judgments or unadjudicated claims are subsequent in priority to an earlier judgment. In neither event, however, can it be seriously contended that the estate absorbing judgment is, or should be, for that reason ineffective. If such a judgment should be held inoperative simply because it consumed the estate of the judgment debtor and prevented his heirs from receiving his property or deprived subsequent creditors from satisfying their claims against it there would be no reason or excuse for a court to enter any judgment in favor of creditors against their debtors. The arguments just considered, in my opinion, are not only entirely unsound, but they tend to defeat their expressed purpose.

I can not agree to the statement in the majority opinion that "in determining what is the weight of authority on a particular question, we are no more required to base our finding on the number of cases, pro and con, bearing on the question, than to base a finding of fact on the number of witnesses testifying as to a disputed fact in the trial of an action at law." The attempted analogy between the weight of authority and the weight of evidence seems to me to be entirely lacking. In reality the factual situation actually exists and is not altered by, or in spite of, the conflicting evidence of witnesses who undertake to narrate it in any given case. In that situation the endeavor is to determine which of the versions is the true or the most nearly true recital. None of them may be the exact or the entire truth; but in the effort the triers of fact may be fully justified in believing one convincing witness whose narrative is at variance with that of the greater number. In adopting an abstract rule or principle of law, however, the endeavor is not to ascertain the existence of a factual situation but to give due consideration to the wisdom and the justice of the conclusions of other learned, capable and experienced tribunals that have studied and toiled with the problem, and reached a final solution in a given case. To say that the greater number of decisions to the same effect is of no more value than a lesser number of decisions, or a

single decision, to the contrary with respect to the same question seems to me to reject summarily the learning and the experience of the many in favor of the same qualities of the equally capable few. Sound practice in such matters usually does not dictate that course.

I think there is no justification for the statement in the last paragraph but one of the majority opinion that, in dealing with the decree of the court of common pleas of August 26, 1943, "We are merely interpreting its intended meaning, force and effect, at the time it was entered", or the statement: "Such a question is presented on this certification." With deference, I assert that no question of interpretation arises in this case. The provision of the decree is clear and free of any suggestion of doubt or uncertainty. It states in familiar and express terms that the defendant shall pay the sum of $45.00 per month for the support of the children until the further order of the court, and it means exactly what it says. Anyone and everyone can understand its plain and clear meaning, force and effect. No one questions its meaning or the significance of the clear and easily understandable effect of the simple language in which it is couched. That issue is not mentioned and does not arise in this case. When the language of a written instrument is plain and unambiguous, as here, there is no occasion or justification for its interpretation by the court. "Where the terms of a writing are plain and unambiguous there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty." 12 Am. Jur., Contracts, Paragraph 229; *Kanawha Banking and Trust Company* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225; *Adkins* v. *Aetna Life Insurance Co.,* 130 W. Va. 362, 43 S. E. 2d 372. "The function of judicial construction of a written instrument is confined to the realm of ambiguity and there is no occasion for its exercise outside the limits of that sphere of inquiry." *Kanawha Banking and Trust Company* v. *Gilbert,* 131 W. Va. 88, 46 S. E. 2d 225. See also *Hamilton* v. *Rathbone,* 175 U. S. 414, 20 S. Ct. 155, 44 L. ed. 219; *Country Club of Portsmouth* v. *Wilkins,* 166 Va. 325, 186 S. E. 23. If a writing is not ambiguous, it

speaks for itself, and courts must carry its written word into effect. *Uhl* v. *Ohio River Railroad Company,* 51 W. Va. 106, 41 S. E. 340.

For the reasons given, and because of the controlling authority of the statutes, the reasoning employed and the conclusions reached in the prior decisions of this Court, and the persuasive force of numerous cases of highly respectable courts of last resort in other jurisdictions, which I have cited and quoted from to an extent which could hardly be justified except for the importance of the question involved, I can not agree to the conclusion reached by the majority in this case.