CHARLES P. MILLER *et al. vs.* HENRY W. MILLER.

*Alimony—does not cease at appellee's death.*

A decree made in a divorce suit that the mother shall have the care and custody of her minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of the court, is not discharged by his death; and a bond given to secure the performance of such a decree, is binding upon the surety notwithstanding the death of the principal obligor.

ON FACTS AGREED.

DEBT upon a bond signed by the defendant with one Nathaniel J. Miller, deceased. The plaintiffs are the minor children of said late Nathaniel J. Miller and of Sarah P. Miller who was divorced from him upon her libel, at the October term, 1871, of this court, and it then was ordered and decreed that instead of alimony the

specific sum of seven thousand dollars be forthwith paid by the said Nathaniel J. Miller to the said Sarah P. Miller, for which execution was to issue in the usual form; and it was further "ordered and decreed that the said Nathaniel J. Miller pay the further sum of one hundred and thirty dollars on the first Monday of the months of January, April, July and October of the year 1872, and the same amount upon each and every first Mondays of said months thereafter occurring until the further order of this court, for the use of the said Sarah in the care, support and education of Charles P. Milller and Mary Miller, minor children of the said Sarah and Nathaniel; that the care, custody, support and education of said minor children be committed to said Sarah, free from all restraint or interference by the said Nathaniel, his agents or servants, until further ordered by this court;" and the libellant was also required to present to some justice of this court a quarterly account of her expenditures for the children.

When this decree was made a bond similar in tenor to the one in suit was given, with one Daniel W. Miller as surety, for the performance of so much of the decree as required the quarterly payments of $130, and subsequently, upon the death of said Daniel, the bond in suit was substituted. The plaintiffs' counsel offered to prove, if admissible, that, at the time the decree of divorce was entered, the presiding justice stated that he should not require a bond for the performance of so much of the decree as related to the support of the children—although the libellee had been adjudged in contempt in not complying with a previous order passed during the pendency of the divorce proceedings—but suggested a mortgage of real estate; but subsequently said Nathaniel gave the first bond before mentioned, with the assent of the presiding justice. To this testimony the defendant objected, and it was to be considered or rejected as the principles of law might require. The said Nathaniel made the required payments regularly up to the one which fell due on the first Monday of April, 1873, which was not paid, and none were paid afterwards. At that time he was sick and unable to attend to business, and died

on the seventeenth day of April, 1873. The defendant offered to be defaulted for the instalment due in April, 1873, and interest after. No alteration has been made by the court in the decree. The estate of said Nathaniel was represented insolvent, but the commissioners had not reported.

The plaintiffs' mother, as their next friend, had made application to the judge of probate, under R. S., c. 65, § 25, for an allowance to them, which petition is still pending.

It was agreed to submit the case upon the foregoing facts to this court for such judgment as the rights of the parties required.

*Strout & Holmes* for the plaintiffs.

The contingency contemplated has not occurred. There has been no modification of the decree; N. J. Miller's liability was under the decree, and not the mere common law liability of a father.

*Butler & Libby* for the defendant.

No decree for alimony should extend beyond the life of both parties. *Burr v. Burr*, 7 Hill, 207. This must be construed with that limitation, since Nathaniel could not pay any longer than during his life, and the defendant's engagement, being measured by that of his principal, must terminate with it.

Had Nathaniel died solvent, his children would have been entitled to inherit his estate and to be supported out of it; but, being insolvent, they have no right to be supported by the creditors, as they would be if this amount is paid by Henry W. Miller and by him taken out of the assets of his brother's estate. *Stinson v. Prescott*, 15 Gray, 335.

This is one of that class of contracts where the continued existence of one of the parties is an implied condition. 2 Chitty on Contracts, 11th edition, 1411; *Dexter v. Norton*, 47 N. Y., 62.

The jurisdiction of the court as to a decree determining which parent shall have the custody of the children and what shall be done for their support must terminate with the death of the father.

WALTON, J. The question is whether a decree of this court, made in a divorce suit, that the mother shall have the care and

custody of the minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of court, is discharged by the father's death.

We think it is not. The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. If, from hostility to the mother, or other cause, there is danger that the father will disinherit his children, and thus leave them to be supported by their mother without any aid from his estate, a decree may very properly be made for their support that shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court. And if there is danger that the father will squander his property, or convey it away, so that none will be left for the decree to operate upon, he may very properly be required to give security.

We do not controvert the position of the learned counsel for the defendant that, by the rules of the common law, a father is under no legal obligation to provide for the support of his children after his death. It may be that he can disinherit them and leave them to be supported by others. "I am surprised," said Lord Alvanley, "that this should be the law of any country, but I fear it is the law of England." 2 Kent's Com., 10th ed., 225.

But we think such can only be the law when the family relations remain intact, and when there is no great danger that such an arbitrary power will be exercised. We think that when, through the fault of the father, his family is broken up, and his children become in one sense the wards of the court, this power is taken from him, and he may be compelled, if of sufficient ability, to give security for the support of his children that shall be binding upon his estate.

Certainly such ought to be the law. Take, for instance this very case. Here was a father, who, being possessed of a large estate by inheritance, was amply able to provide for the future support of his children. Through his own misconduct his family

was broken up. His wife had obtained a divorce from him, and it was in proof before the court that his habits were such that it was no longer fit for him to have the care and custody of his children. It was perfectly evident that he would do nothing for their support, if they should be taken from him, except upon compulsion. In fact he was already in contempt for disobeying the order of the court requiring him to furnish means for their support. His course of life was such that it must have been painfully evident to his friends, as well as the court, that insolvency, and an early death, were probable results. Under these circumstances, what ought to be done? What power should the court possess? To guard against the danger of a resentful disinheritance of his children, should not the court possess the power to make a decree that should be binding upon his estate? To guard against the danger of insolvency, should not the court possess the power of requiring security? We think no one will doubt that such ought to be the law. We think it is the law. As before remarked, the statute conferring jurisdiction in such cases is very broad. It declares that the court may make such decree concerning the care, custody, and support of the minor children of the parties, and alter it from time to time, "as circumstances require," and employ any compulsory process they deem proper. R. S., c. 60, § 19.

We are aware of no rule of law in conflict with this decision. Nothing was decided in *Stinson* v. *Prescott*, 15 Gray, 335, cited by defendant's counsel, except that the written promise of the husband to pay his wife's board and other expenses at a hospital imposed no obligation upon his administrator to pay for her board after the husband's death, the contract itself being silent as to the length of time for which the husband should be holden. The court did not decide that a husband could not make a contract for his wife's support that should be binding upon his administrator. We apprehend no court ever so decided. They simply decided that that particular contract imposed no such obligation. If, like the bond sued in this case, it had expressly declared that it should be binding upon his administrator, or executor, the court would

Miller *v.* Miller.

probably have come to a different conclusion. Nor did the court decide that a decree could not be made for the support of a wife which should be binding upon the husband's personal representatives. The contrary was held in *Burr* v. *Burr*, 10 Paige, 20, in the chancellor's court, and same case, 7 Hill, 207, in the court of errors. It was there held that alimony could be decreed to continue after the husband's death, during the entire life of the wife. Bishop on Marriage and Divorce, § 601, last clause. So, in *Carson* v. *Murray*, 3 Paige, 483, where the husband and wife agreed to separate, and the articles of separation contained a provision for the payment of an annuity of $175 per annum to the wife during her life, as alimony, it was held that the annuity did not cease at the death of the husband, although there was a provision in his will for her benefit, which, if accepted, was to be in lieu of dower.

Our conclusion, therefore, is that, a decree made in a divorce suit, that the mother shall have the care and custody of the minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of court, is not discharged by his death; and that a bond given to secure the performance of such a decree, is binding upon the surety, notwithstanding the death of the principal obligor.                *Judgment for plaintiffs for the penal sum named in the bond. Execution to issue for the full amount of the quarterly payments in arrear at the time of the rendition of judgment.*

CUTTING, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

VIRGIN and PETERS, JJ., did not sit in this case.