[No. 10975.   Department Two.   August 29, 1913.]

Luvilla J. Stone, *Respondent*, v. Frank S. Bayley, *as Executor etc., Appellant.*[1]

Executors and Administrators—Claims Against Estate—Support of Child—Contracts—Survival. The obligation of a divorced husband, under an agreement entered into pending an action for divorce, to pay monthly installments for the support of a minor child, survives upon his death, and may be enforced as a claim against his estate, where the intention of the parties that it should survive appears by provisions of the contract that the "payments were to continue during the minority of said child but to cease upon her earlier death," and that the contract should be as binding as if set out in the decree of divorce.

Divorce—Support of Child—Alimony—Continuing Payments—Survival—Death of Parent. The court has power, in a divorce case, to make a provision for alimony and the support of a minor child that will survive, and may be enforced out of the estate of the party charged, in view of Rem. & Bal. Code, § 989, providing that, in granting a divorce, the court may make such disposition of the property as may be just and equitable, and shall make provision for the support of the minor children of the marriage.

[1]Reported in 134 Pac. 820.

DIVORCE—DISPOSITION OF PROPERTY—AGREEMENT OF PARTIES—VA-
LIDITY. A contract between the parties to an action for a divorce
making a division of their property and providing for monthly pay-
ments for the support of a minor child, does not contravene any
principle of public policy.

Appeal from a judgment of the superior court for King
county, Myers, J., entered November 2, 1912, upon findings
in favor of the plaintiff, after a trial on the merits before
the court without a jury, in an action to enforce claims
against the estate of a decedent. Affirmed.

*Willis B. Herr,* for appellant.

*Geo. McKay* and *Thomas B. MacMahon,* for respondent.

ELLIS, J.—On October 19, 1910, John W. Stone and Lu-
villa J. Stone were husband and wife. An action was then
pending between them for a divorce, instituted by Luvilla J.
Stone in the superior court of King county. The issue of
the marriage of the parties was a female child, then of the age
of six years; they also owned property of the value of eight
or nine thousand dollars. For the purpose of providing for
the support and custody of the child mentioned, and of set-
tling their property rights in case a divorce should be granted
in the pending suit, the following agreement was entered into
between them:

"This agreement made and entered into this 19th day of
October, 1910, by and between Luvilla J. Stone, plaintiff
above named, party of the first part, and John W. Stone, the
defendant, party of the second part, the respective counsel
for said plaintiff and defendant concurring therein;

"Witnesseth: That whereas, the party of the first part,
as plaintiff, has in the above entitled action begun an action
for a divorce against the party of the second part, as de-
fendant, and for certain property division, alimony, custody
and maintenance of the minor child of parties;

"And, whereas, said parties desire to settle, and adjust
amicably certain of the matters arising out of said action,
now, therefore, it is hereby mutually agreed by and between
the parties hereto as follows, to wit:

"(1)   That said decree may award the care, custody and control of the minor child of the parties hereto to said first party.

"(2)   That party of the second part shall and will forthwith upon the filing of the divorce decree in said action pay to first party, through her counsel, the sum of Fifteen Hundred Dollars ($1,500) cash, the same to be in lieu of all alimony, costs, suit money and interest in the property, either real or personal, of the community or of second party and that first party will execute any deed or other release desired by second party's counsel touching title to said property.

"(3)   That second party shall and will on the day said decree is filed and monthly thereafter, and on or before the 15th day of each and every month, pay to said first party, solely for the support and maintenance of said minor, the sum of Twenty-five Dollars ($25), said payments to continue during the minority of said child but to cease upon her earlier death, and that in case of the sickness or injury by accident of said minor, second party will pay such further reasonable and proper charges as may be incurred in her care and on her behalf in excess of said Twenty-five Dollars ($25) monthly, or such accumulation as may accrue in addition to said monthly payments, provided, however, that such additional payments shall be made only upon the presentation of bills duly certified by claimants.

"(4)   It is understood and agreed that in view of the agreement herein reached and made by and between the parties hereto with reference to the payment of the amounts hereinabove set forth at the times and in the manner stated, the same need not and shall not be incorporated in the decree to be entered in said divorce action, but shall be as binding upon the party of the second part and shall have the like force as though the same were set forth and contained in said decree.

"(5)   That said second party shall have the right to visit said minor child at reasonable and proper times and with her consent, to have her visit his home at reasonable times for a reasonable period.

"In witness whereof, the parties hereto have hereunto set their hands and seals in duplicate at Seattle, Washington, this 19th day of October, 1910."

Later on in the same day, after a hearing by the court, a divorce was granted at the suit of Luvilla J. Stone; the decree for which awarded her the custody of the minor child, but made no provision for its support, nor any disposition of the property of the parties, nor did it contain any reference to the foregoing agreement. John W. Stone paid to Luvilla Stone the cash agreed to be taken in lieu of alimony and suit money, and during the few months he lived after the decree, paid the monthly allowances provided for in the agreement for the support of the minor daughter. John W. Stone had been married prior to his marriage with Luvilla J. Stone, and had as the issue of his first marriage four daughters, three of whom were under the age of majority at the time the divorce decree was entered.

John W. Stone died on January 3, 1911, leaving a will in which he named Frank S. Bayley, the appellant in this proceeding, as his executor. By the terms of his will, he left to the children of his first wife certain life insurance amounting to $2,000, to be divided between them share and share alike; to his daughter by his second wife $1,000, under the direction that the sum named should be paid to Thomas H. Stein, as trustee, to hold until his daughter should reach the age of twenty years, when it should be paid over to her, with the increment thereof. No provision was made for the support of this daughter during her minority in case of his death. The residue of his property he also directed to be conveyed to Stein, as trustee, to be held for the benefit of the daughters by his first marriage, the income of the same to be applied to their support and maintenance during their infancy; and the principal, with any increase, to be turned over to these children by the first wife on their reaching the age of majority. It appeared that the whole estate in the executor's hands, including the life insurance, was of the value of $9,000. Stone, at the time of his death, was working for a salary of $175 a month.

After Stone's death, no payments for the support of the

daughter of the second marriage were made to Luvilla J. Stone under the contract set forth, and on January 30, 1912, she presented to the executor a claim for the installments then due thereunder, aggregating three hundred dollars; and a few days later presented a claim for thirty-one hundred and fifty dollars, being the amount claimed as necessary to meet the future installments as they became due under the contract. The executor rejected the claims, and the present proceeding was instituted to establish the same as claims due and payable from the property of the estate in the hands of the executor. After a hearing, the court entered the following judgment:

"It is considered and the court does hereby adjudge and decree as follows:

"(1)  That the sum of four hundred ninety and 83-100 dollars ($490.83) for the period beginning on the 15th day of January, 1911, and ending on the fourth day of September, 1912, be allowed and established as an unconditional claim in favor of the plaintiff and against the said estate and that the said claim be paid in due course of administration of the said estate.

"(2)  That the plaintiff's claim from the 4th day of September, 1912, and thereafter during the minority of said child, on condition that plaintiff maintain and support said child, be allowed and approved as an established claim against said estate, to be paid to plaintiff on the conditions aforesaid, at the rate of twenty-five dollars ($25) per month, on the 15th day of each and every month and to be paid in the due course of administration of said estate.

"(3)  That plaintiff recover her costs and disbursements to be taxed and to be paid in due course of administration of said estate."

From the judgment so entered, this appeal is prosecuted.

The argument of counsel is directed to the single question, Did the obligation of the contract to pay the monthly allowance for the support of the minor child survive the death of the promisor?

Unless this contract is contrary to public policy, or in contravention of some statutory enactment, the question must be

determined by the intention of the parties, to be gathered from the contract. That it was the intention of the parties that the contract should survive, in case the child survive, cannot be questioned. The words, "said payments to continue during the minority of said child but to cease upon her earlier death," leave no room for other construction. The death of the child during minority is the only terminating contingency specifically recognized in the instrument. There is no hint that the obligation of the contract should be contingent also upon the promisor's survival. That the father himself recognized this as a continuing provision for the support of this child is evidenced by the fact that in his will he provided for the support of his other children during their minority, yet made no such testamentary provision for this child's support, though making bequests in trust for all of his children to fall into their possession with the increment after they shall severally attain their majority. The only modifying element in the contract is found in the stipulation that it "shall be as binding upon the party of the second part and shall have the like force and effect as though the same were set forth and contained in said decree" (of divorce). If, therefore, such a provision, had it been set out in the decree itself, would have been valid and surviving, there can be no question that the contract is valid and that the obligation survives. That such a provision for the support of a minor child, when contained in the decree of divorce, survives as against the husband's estate, subject only to the future orders of the court, can hardly admit of serious question. While it is true that, at common law, a father was under no legal obligation to provide support for his minor children after his death, we can conceive of no sound reasons of public policy to prevent his so doing. He can by contract create a continuing debt in favor of strangers which would constitute a claim against his estate; then why not as in favor of his children? Moreover, in the United States, the powers of the courts in divorce matters are statutory. Our statute is certainly broad enough

to enable the court to provide for the support of minor children and make the provision binding upon the estate. Rem. & Bal. Code, § 989 (P. C. 159 § 15), reads as follows:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage."

This statute clearly recognizes the power of the court to burden the property for the benefit of children. Under this statute we have repeatedly held that jurisdiction of the court was a continuing one "so long as there is a minor child whose maintenance and welfare are provided for in the decree." *Poland v. Poland,* 63 Wash. 597, 116 Pac. 2; *Fickett v. Fickett,* 39 Wash. 38, 80 Pac. 1134; *Dyer v. Dyer,* 65 Wash. 535, 118 Pac. 634. The power of the court is not confined to the imposition of a mere personal claim. *King v. Miller,* 10 Wash. 274, 38 Pac. 1020. In the absence of statutory inhibition, it is the general rule that such provisions for support do not necessarily terminate upon the father's death.

"A decree directing a father to provide for the support of his minor children until the further order of the court is not necessarily discharged by his death; but upon the death of the mother to whom the allowance was directed to be paid the decree becomes ineffective and the husband's duty to support the child becomes absolute." 14 Cyc. 814.

The more persuasive authorities support this view. In *Miller v. Miller,* 64 Me. 484, the decree of divorce gave the care and custody of the minor children to the mother, and contained a provision that the father pay a certain sum quarterly toward their support, to continue in force until the further order of the court. A bond was given to secure the performance of the decree. The supreme judicial court of Maine,

in a well considered opinion, held that the decree was not discharged by the father's death, and that the bond was binding upon the surety notwithstanding the death of the principal. The court said:

"The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. If, from hostility to the mother, or other cause, there is danger that the father will disinherit his children, and thus leave them to be supported by their mother without any aid from his estate, a decree may very properly be made for their support that shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court. And if there is danger that the father will squander his property, or convey it away, so that none will be left for the decree to operate upon, he may very properly be required to give security. We do not controvert the position of the learned counsel for the defendant that, by the rules of the common law, a father is under no legal obligation to provide for the support of his children after his death. It may be that he can disinherit them and leave them to be supported by others. 'I am surprised,' said Lord Alvanley, 'that this should be the law of any country, but I fear it is the law of England.' 2 Kent's Com., 10th ed., 225. But we think such can only be the law when the family relations remain intact, and when there is no great danger that such an arbitrary power will be exercised. We think that when, through the fault of the father, his family is broken up, and his own children become in one sense the wards of the court, this power is taken from him, and he may be compelled, if of sufficient ability, to give security for the support of his children that shall be binding upon his estate."

After a further discussion, showing the justness and humanity of such a rule, the court adds: "We are aware of no rule of law in conflict with this decision." The fact that the security was given can make no difference. It is obvious that the surety was bound on his bond only because the estate of the principal was bound by the decree. Failing this, the bond would necessarily have been discharged, both as to principal and surety, by the death of the principal. It can hardly be

claimed that the obligation of the surety extended beyond that of the principal. A distinction founded in the giving or requiring of security can rest on no sound basis. The provision for security is a difference in circumstance; not in principle. An appreciation of this fact makes the rule announced in the foregoing case, and also in *Murphy v. Moyle*, 17 Utah 113, 53 Pac. 1010, 70 Am. St. 767, clearly applicable here. In *Murphy v. Moyle*, under a statute which is quoted in the opinion, and which certainly confers no broader powers upon the court than our own, the supreme court of Utah held that a decree of absolute divorce, granting the mother the care and custody of children and adjudging that the father pay a certain sum annually toward their support "during the minority of said children," was not discharged nor annulled by the death of the father. After quoting the statute, the court said:

"This statute is broad and comprehensive. Under it the court has power to make such a decree as the circumstances may warrant, and doubtless, if there is danger of the father squandering the estate, or if, from hostility or other cause he is likely to refuse maintenance to his wife, or support to his children awarded to her, and thus leave the children to be supported by the mother without aid from his estate, the court may make such order, respecting the property and the support and maintenance of the wife and children, as is just and equitable, and such order or decree may be made to continue in force after his decease; and the court may afterward, if occasion shall require it, make such change in any decree as 'will be conducive to the best interest of all parties concerned.' The court may also properly require the husband to furnish security where there is danger that he will dispose of his property or squander it, so that nothing will remain upon which the decree can operate."

This was based distinctly upon the wording of the statute, and upon the fact that the divorce was absolute and that there was no other limitation to the monthly payment for the support of the children than their minority. While the fact is also noted that the payments were made by the decree a

lien upon specific property, this was not the controlling circumstance, since it can hardly be contended that if there had been no continuing debt there could have been a continuing lien. There was nothing in the decree indicating, nor did the court hold, that the recovery for such payment would be limited alone to the security, if it had been insufficient, or that the exhaustion of the security would discharge the decree. The contrary is clearly inferable from the opinion. The court said:

"The court had the right to enforce the former decrees, and foreclose the lien upon failure of payment, and its power to do so was not affected by the death of the testate, and, if the proceeds shall be insufficient to satisfy the claim, it may enforce payment of the balance out of the estate: *Miller v. Miller*, 64 Me. 484; *Storey v. Storey*, 1 L. R. A. 320; *Carson v. Murray*, 3 Paige 483; *Burr v. Burr*, 7 Hill 207; *Stratton v. Stratton*, 52 Am. Rep. 779."

The power to decree a continuing security is traceable, of course, to the power to decree a continuing obligation to pay. If, therefore, the decree requires no security but does not limit the support to the life of the husband but only to the life or minority of the child, it follows that the provision for support is a continuing claim against the estate generally.

In *Schultze v. Schultze* (Tex. Civ. App.), 66 S. W. 56, the authority chiefly relied upon by the appellant, the minor child received all of the husband's property by will. The proceeding by the mother was to obtain an allowance under a provision in the decree of divorce awarding her sums payable at stated intervals for the child's support. Obviously, the allowance in such a case would have to be made from the child's own property. While there is language in the opinion tending to support the appellant's contention that provisions for support or alimony would not survive, the peculiar circumstances of the case render the decision of little value as a precedent.

If there is any difference in principle between an award of

alimony and an award for the support of a minor child, it is difficult to discover. The statute makes no distinction as to the power of the court, and they have the same status at common law and for the same reason. A husband's duty to support the wife continued only during the continuance of the marriage tie. A father's duty to support his minor child continued only during the life of the father. Hence at common law the decree in either case was discharged by the husband's or father's death. On grounds of a humane public policy, however, the difference, if there is any, is all in favor of the survival of the obligation to maintain minor children wherever a decree for alimony couched in similar terms would survive. The cases involving alimony are much divided, as is apparent from the comprehensive note to *Wilson v. Hinman,* 2 L. R. A. (N. S.) 232. We think, however, that under a statute such as ours, the weight of authority sustains the power of the court to make a decree for alimony which will survive the death of the husband. *Seibly v. Person,* 105 Mich. 584, 63 N. W. 528.

Authority is not wanting that the making of a contract by the parties that a decree may be entered providing for the payment of alimony or for the support of minor children to continue after death of the father has the effect of giving the court power to make such a decree even if the court would not ordinarily possess that power under the statute. In *Stratton v. Stratton,* 77 Me. 373, 52 Am. Rep. 779, where a decree, made in accordance with an arbitration as to property rights, provided that alimony should be paid to the wife "during her natural life," it was held that the power of the court to make such a decree, even in a suit by the husband, could not be disturbed after the parties had submitted the matter to arbitration and the decree was based upon the report of the arbitrators. The court said:

"This is undoubtedly true in cases where there is no waiver by the husband of his strict legal rights, and the decree is made in opposition to his will. It may be conceded to be

settled in this state that the jurisdiction and authority of the court, in matters pertaining to divorce, are derived from the provisions of the statute. *Henderson v. Henderson*, 64 Me. 419. But the court, being invested with jurisdiction in reference to alimony, there is nothing whereby parties are prohibited from entering into a proper agreement in reference thereto, or the court from rendering judgment in accordance with the agreement of the parties, which they have seen fit to make, as in other cases. In relation to such judgments, the court, in *Fletcher v. Holmes*, 25 Ind. 458, says: 'It is well settled that a judgment by agreement of a court of competent general jurisdiction, having power in a proper case to render such judgment, and having the parties before it, will bind the parties, notwithstanding proceedings in a contested case would not authorize such judgment.' "

In *Wilson v. Hinman, supra,* it was held that a decree that the husband pay alimony to the wife in installments "so long as she may live," terminated with his death. The apparent conflict of this decision with earlier New York cases is explained by the court upon the ground that the statute had been changed so as to restrict the power of the court to the imposition of a personal obligation only, whereas formerly the statute permitted the binding of the husband's property. Special stress is also laid upon the fact that the right of dower was not lost by the divorce, but still remained available to the wife upon the husband's death, so that to hold the wife entitled to alimony after his death, would make her position better than that of a wife who had never been divorced. The court, however, makes the following statement, especially significant in view of the narrow terms of the New York statute:

"It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that it to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would, doubtless, be enforceable by the courts.

It is on this ground that the decision in *Storey v. Storey* (125 Ill. 608) proceeded."

This language would clearly support the contract here involved as a surviving obligation. In *Storey v. Storey*, 125 Ill. 608, 18 N. E. 329, 8 Am. St. 417, 1 L. R. A. 320, a husband by consenting to a decree to pay alimony to his divorced wife, "so long as she may remain sole and unmarried," was held to have subjected his estate to a debt continuing after his death. See, also, *Carson v. Murray*, 3 Paige Ch. (N. Y.) 483.

There are doubtless many cases holding that a decree for the payment of alimony does not survive, but an analysis will show that many of them are based upon the fact that the decree was not for an absolute divorce, but merely for a separation. In such a case, the rule of the common law would necessarily apply. For example, see *Lockridge v. Lockridge*, 3 Dana (Ky.) 28, 28 Am. Dec. 52. It seems to us that, both upon reason and authority, a contract such as here involved should be held to survive. There is no sound principle of public policy to the contrary. As bearing upon this phase of the case, we quote again from *Murphy v. Moyle, supra*:

"We cannot sanction appellant's contention. It is unsound, as being at variance not only with the decrees of the court and the law, but also with justice for it is the solemn duty of every husband and father to support his wife during life, and his children during their minority, suitably to their station in life, and, if he fail to do so, every principle of justice demands that they be thus supported out of his estate."

Such a contract is no more in fraud of the heirs than if the same provisions were found in a will. No heir, as such, has a vested interest in an estate during the life of the owner. No one is heir to the living. The husband in this case made the contract while his property was his own, and there is no more reason why the contract should not create a valid claim against his estate than in case of any other contract which he might have made. It is no more in fraud of creditors

than any other contract providing for future payments would have been. Not being declared a lien upon specific property, it has the same status as the claims of other creditors against the estate. It is a valid contract which may not be defeated by any testamentary disposition of the obligor's property.

We are convinced that it was the intention of the parties that the obligation of this contract should survive the husband's death during the life and minority of the child. We are further convinced that, under our statute, a similar provision if contained in the decree of divorce would have been valid and surviving, and that neither such a decree nor such a contract contravenes any principle of public policy.

The judgment is affirmed.

CROW, C. J., MAIN, and MORRIS, JJ., concur.