RUTH NELSON EDELMAN,

*Plaintiff and Respondent,*

vs.

HELEN L. EDELMAN, Executrix of the Estate of Theodore I. Edelman, Deceased,

*Defendant and Appellant.*

(No. 2402; November 23rd, 1948; 199 Pac. (2) 840)

For Plaintiff and Respondent the cause was submitted on the brief of Volney J. Tidball, Jr. of Sheridan, Wyoming.

For Defendant and Appellant the cause was submitted on the brief of R. G. Diefenderfer of Sheridan, Wyoming.

## OPINION

RINER, Chief Justice.

The plaintiff, Ruth Nelson Edelman, in Person and as Guardian of the Person and Estate of Mark N. Edelman, a minor, on January 2, 1947 filed her petition in the district court of Sheridan County, Wyoming against Helen L. Edelman, Executrix of the estate of Theodore I. Edelman, deceased, as defendant. The material allegations of this pleading to be considered here are substantially these:

After stating that the plaintiff is the duly appointed, qualified and acting guardian of the person and estate of Mark Nelson Edelman, a minor who is the son of plaintiff and Theodore I. Edelman, deceased, born August 25, 1939 to plaintiff and her then husband, Theodore I. Edelman; that she and her said husband on April 22, 1940 were divorced by a decree of the district court above mentioned, copy of said decree being attached to and made a part of plaintiff's petition; and that in said decree judgment was rendered against the said Theodore I. Edelman in favor of plaintiff for the sum of thirty dollars per month to

be paid by him to her for the care, maintenance, and support of his minor son aforesaid, said judgment "being rendered in accordance with an express agreement between the said parties to the action, and said monthly payments to continue until further order of the court" alleges also that the said Theodore I. Edelman made payments to plaintiff in accordance with said judgment regularly each month from the date of said decree, to-wit from April 22, 1940 until his death which occurred about April 14, 1946, the last payment having been remitted on March 22, 1946, the last due date thereof before his decease.

That the said Theodore I. Edelman died testate in said Sheridan County leaving an estate in said county and state which is now in the process of probate; that by his will said Theodore I. Edelman entirely pretermitted his said minor son leaving his entire estate to his widow, Helen L. Edelman, the Executrix of said will and the defendant in this action; that the latter has qualified as such Executrix and ever since has been and now is the duly appointed, qualified and acting Executrix of said estate.

That about November 12, 1946 plaintiff filed with the clerk of the district court above named and with R. G. Diefenderfer, attorney for said Executrix, her claim for the sum of Five Thousand One Hundred Ninety ($5,190) Dollars, that sum being the amount due, payable and to become payable to plaintiff herein during the minority of said Mark Nelson Edelman, the minor son of the deceased, from March 22, 1946 until said minor reaches his majority on August 25, 1960 but that said claim was rejected and payment refused in its entirety on or about November 15, 1946 by the said R. G. Diefenderfer, attorney for defendant.

That plaintiff claims from said estate the aforesaid sum of money as the total "amount due, payable and

to become payable from said estate under the agreement and judgment hereinabove described" for the stated period previously averred.

The prayer of the pleading is for a judgment in favor of plaintiff for the sum of $5,190 for the care, maintenance and support of said Mark Nelson Edelman during the latter's minority and for costs, said sums to be paid in due course of the administration of said estate and for such other relief as the court may deem equitable for the protection and welfare of said minor child.

The decree of divorce attached to and made a part of said petition after finding generally in her favor on all issues in the case and that Ruth E. Nelson Edelman was entitled to a divorce, found also, to state these findings of the district court of Sheridan County verbatim, that:

"on August 25, 1939, there was born to said parties a son whose name is Mark Edelman; that said Petitioner is a fit and proper person to have the care and custody of said child and that the said Theodore I. Edelman, father of said infant son, should contribute the sum of $30.00 per month for the maintenance and support of said minor child until the further Order of this Court.

"That the property rights of the parties hereto have been settled between them by separate agreement."
Upon these findings the court adjudged and decreed that:

"the bonds of matrimony existing between the parties hereto be and the same are hereby dissolved and set aside and that the Petitioner, Ruth E. Nelson Edelman, have a Decree of absolute divorce from the said Theodore I. Edelman; that said Petitioner have the care, custody and control of Mark Edelman, minor son of the parties hereto, until the further Order of this Court, and that she have judgment against Theodore I. Edelman for the sum of $30.00 per month, payable

monthly, as his contribution to the maintenance, support and care of said infant son, and that the Court reserve jurisdiction over the respective parties to this cause, and over the said minor child of said parties for the purpose of making future orders with respect to his custody, maintenance, care, support and education, and that the said Theodore I. Edelman pay the costs of this action taxed at $......................

"That the said Theodore I. Edelman shall hereafter have the right to visit the said minor child of the parties hereto at reasonable times.

"Done in open Court this 22 day of April, 1940."

February 21, 1947 the defendant filed a demurrer to this petition on two grounds, the first one being:

"That there is a misjoinder of parties plaintiff in that Ruth Nelson Edelman brings the action both in her natural capacity and as guardian of the person and estate of Mark Nelson Edelman, a minor."

The second ground was:

"That the Petition does not state facts sufficient to constitute a cause of action."

The district court by an order dated October 9, 1947 sustained the first ground of this demurrer and directed that the action should continue "in the sole name of Ruth Nelson Edelman as plaintiff". There was no appeal from this ruling. The second ground of the demurrer was overruled. Thereupon the defendant declined to plead further and electing to stand upon her second ground of demurrer, the district court entered a judgment against the Executrix, defendant, for the sum of $5,190 and costs as prayed in plaintiff's petition, said sums to be paid in due course of administration of the Theodore I. Edelman estate. From this judgment the defendant as appellant has prosecuted this direct appeal proceeding.

The main questions raised by defendant's demurrer and principally argued by the parties are (1) whether

the liability of the father of a minor child for the latter's care, maintenance, and support adjudged in a divorce decree in favor of the mother, which dissolved the bonds of matrimony between these parents and gave the custody of the child to her, terminated upon the father's death, (2) whether that obligation survives his death as a proper claim and liability against his estate, and (3) whether, if this obligation to support his child did not thus terminate, the amount due and to become due may be recovered in a lump sum as decreed by the district court. The answers to these queries urged by defendant and appellant are respectively "yes", "no", and "no". The position of the plaintiff and respondent is that they should be answered as the trial court disposed of them, viz., exactly contrariwise.

We shall now consider the first two of these questions. In view of some points urged by appellant in connection with these matters we may properly recall that where a demurrer has been overruled as here:

"the appellate court will presume the truth of the material and well pleaded allegations of the pleading to which the demurrer or exception has been taken, or, as is sometimes said, will assume that such allegations are susceptible of proof. Apart from this, however, it is the general rule that all reasonable presumptions and intendments will be made in favor of the correctness of the trial court's ruling on the demurrer or exception." 5 C. J. S., 300, and cases cited.

So in Prickett vs. Belvue Drainage District et al, 159 Kans. 136, 152 Pac. 2d 870, 873 under code provisions resembling ours the court said briefly:

"The issue being here upon demurrer, the averments of fact must be liberally construed in the interest of the pleader."

The Court of Appeals of Ohio in Milano vs. Merchant, 70 Ohio App. 142, 45 N. E. 2d 326, 327 also has said:

"The demurrer to the second amended petition admits all material facts well pleaded, as well as all reasonable inferences which may be drawn therefrom, and such facts must be assumed to be true in determining the sufficiency of that pleading".

It is urged by appellant that the judgment and decree pleaded in plaintiff's petition does not show that the father of Mark Edelman was required by said decree to pay to plaintiff the sum of $30 for the care and support of said minor child until the further order of the district court of Sheridan County.

We can not uphold this contention. The judgment and decree as described and quoted above disclose that the court found upon all the issues in the case "generally in favor of Ruth E. Nelson Edelman, petitioner and against the said Theodore I. Edelman" and also that the party last mentioned "should contribute the sum of $30 per month for the maintenance and support of said minor child (Mark Edelman) until the further Order of this Court". The judgment based upon these findings after placing the custody of the child in the mother *"until the further Order of this Court"* directs that "she have judgment against Theodore I. Edelman for the sum of $30.00 per month payable monthly" as his contribution to his son's care and support and expressly:

*"reserves jurisdiction over the respective parties to this cause, and over the said minor child of said parties for the purpose of making future orders with respect to his custody, maintenance, care, support and education".* (Italics supplied.)

In Stroup vs. Hubell Company, 27 N. M. 35, 193 Pac. 519 the court states that:

"The judgment is to be construed with reference to the findings of fact made by the court (23 Cyc. 1102), and, when so construed, it will be seen that it does not have the effect for which appellant contends".

See also to the same effect 34 C. J. 504, Section 797 and cases cited.

Invoking the rules to which reference has above been made, we are convinced that, construing plaintiff's petition and the judgment reasonably and drawing all reasonable inference from an inspection of the decree and findings as an entirety, the district court intended to and did in fact adjudge that the $30 per month payment for the minor son's care and support should continue "until the further Order of the Court" and that this arrangement was agreed to by the parties in making their property settlement through a contract which the court expressly recognized and confirmed.

We pass now to a consideration of what may be regarded as the controlling point in the case at bar. To the minds of people generally it would probably seem unbelievable that there could be any question but that the duty of a father to provide for his minor child should survive the father's death so as to be enforceable against his estate. However, when we examine English law it would appear that the father even during his lifetime was under no legal duty to maintain his minor child. At most there was but a "moral" obligation. Madden, Persons and Domestic Relations, (1931) Section 110, pp. 383-384. In some states in this country that is also the law though statutes even in these jurisdictions have enacted that municipal authorities may compel the father, if he is able to do so, to support his child. Ibid.

In the case of Rawlins vs. Goldfrap, 5 Vesey, 444 the Master of the Rolls, Sir Richard P. Arden (afterwards Lord Alvanley) said:

"If the father had thought fit, he might, I am afraid, by the law of this country leave his children upon the parish. I am surprised, that should be the law of any

country: but I am afraid, it is the law of this: and I have taken occasion before to say so. Not even the parish in such a case can come against the executor."

The weight of American authority is now, however, to the contrary of the English rule. Madden supra p. 384. Just here in that connection we may appropriately refer to the language of the Supreme Court of Ohio in Pretzinger vs. Pretzinger, 45 Oh. St. 452, 15 N. E. 471 where this was said:

"The duty of the father to provide reasonably for the maintenance of his minor children, if he be of ability, is a principle of natural law. And he is under obligation to support them, not only by the laws of nature, but by the laws of the land. As said by Chancellor Kent, 'The wants and weaknesses of children renders it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person'. 2 Kent's Com. 190*; and see *Trustees Jefferson Tp.* v. *Trustees Letart Tp.* 3 Ohio, 100; *Edwards v. Davis*, 16 John. 281. This natural duty is not to be evaded by the husband's so conducting himself, as to render it necessary to dissolve the bonds of matrimony, and give to the mother the custody and care of the infant offspring. It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents, to which they are not parties; or to enable the father to convert his own misconduct into a shield against parental liability. The divorce may deprive him of the custody and services of his children, and of the rights of guardianship against his will; but if by the judgment of the court, and upon competent and sufficient evidence he is found to be an unfit person to exercise parental control, while the mother is in all respects the proper person to be clothed with such authority, he cannot justly complain."

Also we may note that in Wyoming we have a statute empowering the court to order the parents of a minor child to pay "such reasonable sum towards the maintenance of such minor child and at such times in such amounts as the said court may see fit". Section 58-110 W. C. S. 1945. Many other provisions appear in Chap-

ter 58 of the compilation last cited for the protection and care of minor children in this state where such protection and care becomes necessary.

Recurring more directly to the two main questions in the case at bar suggested above we observe in the note to Stone vs. Bayley infra, in 48 L. R. A., N. S. 429 where there is gathered a collection of cases involving the question as to the effect of the father's death upon his liability under the terms of a decree of divorce for the support of his minor child, it is said:

"This question usually arises, however, in cases of divorce where the mother is given the custody of the child, and the father is ordered to pay her a stipulated amount for its support; the general rule being that such an obligation created by decree of court does not terminate upon the death of the father in case he dies before the child arrives at majority, but survives his death."

Similarly the note in 59 A. L. R. 241 says that:

"In divorce cases, where the mother is given the custody of the child, and the father is ordered to pay her a stipulated amount for its support, it is generally held that such an obligation does not terminate upon the death of the father, in cases where he dies before the child arrives at its majority, but survives his death. Especially is this so where the divorce decree is made a lien upon the father's property."

And 17 Am. Juris. 536, 537, Section 706 discusses the same subject in this language:

"However, under modern conditions, the weight of the adjudicated authorities is to the effect that the liability of the father is not necessarily terminated by his death, but may survive against his estate as to subsequently accruing instalments. There is no sound reason why the estate of the father should not be charged with the obligation to provide support for his minor children after his death. Thus, it has been held that where an obligation is assumed by a father in connection with a divorce to contribute a certain

amount per month toward the support of his child, the payment to continue during its minority, but to cease upon its earlier death such obligation is binding on his estate. Likewise, a provision in a decree of divorce against a husband for the payment of a certain sum monthly, until the further order of the court, for the support of his infant child creates an obligation which is not discharged by his death."

In the decisions of Miller vs. Miller, 64 Me. 484; Creyts vs. Creyts, 143 Mich. 375, 106 N. W. 1111; Smith vs. Funk, 141 Okl. 188, 284 P. 638; Mansfield vs. Hill, 56 Ore. 400, 107 Pac. 471, 108 Pac. 1007; Murphy vs. Moyle, 17 Utah 113, 53 Pac. 1010; Gainsburg vs. Garbarsky, 157 Wash. 537, 289 Pac. 1000; and Newman vs. Burwell, 216 Calif. 608, 15 Pac. 2d 511, the obligation of a divorced father to support his minor child was held to survive and the father's estate was charged.

Some cases seem to lay more or less stress upon the fact that the divorce decree imposed a lien upon the father's property. See Estate of Smith, 200 Calif. 654, 254 Pac. 567; Miller vs. Miller supra; Murphy vs. Moyle supra; Pingree vs. Pingree, 170 Mich. 36, 135 N. W. 923. However, in the following cases the father's liability was held to survive although there was no lien; Creyts vs. Creyts supra; Stone vs. Bayley, 75 Wash. 184, 191, 134 Pac. 820, 823; Mansfield vs. Hill supra; West vs. West, 241 Mich. 679, 217 N. W. 924; Smith vs. Funk supra; and Gainsburg vs. Garbarsky supra. In the Newman vs. Burwell case supra the court held, as we shall presently see, that the presence or absence of a lien in the divorce decree relative to the father's property was quite immaterial.

In the decidedly late case of Barger vs. Robitshek et al. (June 18, 1948).........Minn........., 33 N. W. 2d 30 it was held that where a divorce judgment awarded the custody of the child of the parties to the mother and

provided that the husband should pay certain sums for support of the child during the child's minority subject to further order of court and that these payments should be a lien on the husband's property, the liability of the husband survived the husband's death, and also that where an order or judgment is to be in effect until further order of court there is in effect a reservation of jurisdiction to enter a further and final order for judgment and the reserved jurisdiction does not abate and is not defeated in a divorce by the death of the husband.

As expressing contrary views to those appearing in the decisions we have cited above are the Maryland case of Blades vs. Szatai, 151 Md. 644, 135 Atl. 841; the Washington case of Esteb vs. Esteb, 138 Wash. 174, 244 Pac. 264, 246 Pac. 27 and the Florida decision in Guinta et al. vs. Lo Re, ........Fla........., 31 So. 2d 704. There were dissents in the Esteb and Guinta decisions. The later Washington case of Gainsburg vs. Garbarsky supra appears to have taken a different view of the law than was announced in the Esteb case. The dissenting opinion in the Guinta case contains the following very well phrased statement:

"when a divorce decree against the father requires him to pay specified sums at a time stated, for the support of his minor children, he should not be discharged from such payments by his death, if the necessities of the children continue, and the estate of the father is sufficient to take care for their needs. If the father assumes other obligations in the nature of a second marriage, they are said to be subordinate to those he owes to support his children. 17 Am. Jur. 536. It is inconsistent with the whole theory of our law that infants become charges on society if the parent has an estate that may be made available to them. Whether the parent is living or dead is not material. Society is not presumed to take over so long as the father's means are not exhausted."

The New York rulings are more or less confused and confusing. In Rice vs. Andrews, 127 Misc. 826, 217 N. Y. S. 528 where although there had been a divorce decree, a father to whom the custody of his minor child had been given at his request but no support order had been made against the parent in the decree, died soon afterwards and had, by his will, disinherited the child, it was held that the court could make no decree against his estate for the support of that child. In Madden's Persons and Domestic Relations already referred to, after stating the English rule that a child has no claim upon his parent's estate after the parent's death, the learned author remarks that "the absurdity of this rule" is well illustrated by the decision in Rice vs. Andrews supra and then remarks:

"It should not be possible for a parent to disinherit a young child and devise his property to strangers, leaving his child to be a public charge. That is carrying the testamentary capacity to absurd lengths, and statutes should make it impossible."

The New York Court does not seem to have rested its decision upon the fact that there was no order in the decree fixing the father's obligation but rather upon the general principle that the obligation of the parent to support his child did not survive his death.

The later decision given in the case of In Re Johnson's Estate, 56 N. Y. S. 2d 771 held that where the parties to a pending divorce action had therefore made an agreement for the support of their children in order to relieve the court of taking testimony and making a finding on such issue and the agreement was found "to be fair and reasonable" by the referee appointed to hear and determine the issues in the divorce action, the general guardian of the children could not recover the allowance of future support and payments from the father's estate after the latter's death. The rea-

soning of the court would seem to appear in this language taken from the opinion filed:

"The word 'alimony' in its broad sense means also an award made for the support of the children. Schafer v. Schafer, 118 Misc. 254, 255, 193 N. Y. S. 43, 44. And it has been firmly established in this State that an award of alimony does not survive death. See Wilson v. Hinman, 182 N. Y. 408, 75 N. E. 236, 2 L. R. A., N. S., 232, 108 Am. St. Rep. 820."

An examination of the cases cited in the notes in 18 A. L. R. 1040, 101 A. L. R. 323 indicates that the obligation to pay alimony is regarded by the courts generally as resting upon a somewhat different basis than the obligation of a father to support his minor child.

Yet in the still later case of In Re Van Arsdale's Will, 75 N. Y. S. 2d 487 where a husband and wife while a divorce action was pending between them, stipulated for payment to the wife the sum of $500 in full for alimony and $50 per month for the support of their minor daughter until the latter attained twenty-one years of age, it was held that this stipulation did not disclose an intent of the parties that the stipulation merge with the judgment of divorce; that the obligation of the deceased husband to pay the monthly sum for the support of the child survived such judgment as an independent obligation of the husband and upon the husband's death before the child attained her majority this stipulation became a liability of the husband's estate and the wife could recover the amount due upon this agreement after his death. This was said in the course of the opinion:

"The Court may well determine that the claimant herein, who at that time was employed, separated from her husband and earning her livelihood, consented to practically waive her right to alimony yet was insistent that the defendant should in any event

fully support the daughter until she should become twenty-one years of age, as the price of the relinquishing of her alimony rights. The daughter at the time was about twelve years of age. The stipulation does not provide for its incorporation or merger in the decree of divorce and while it was 'filed' in evidence and referred to as an exhibit in the findings of the Master, no specific incorporation or merger was declared or made."

We have not undertaken to give an extended review of any of the foregoing cited decisions but will now present a somewhat more elaborate examination of the two cases referred to above as determined by the Supreme Court of California and this for the very good reason that our Probate Code is, as the members of the legal profession in Wyoming well know, either borrowed or patterned in large measure from the probate law of that state. These cases are respectively, Estate of Smith, and Newman vs. Burwell.

In the first of these two cases it appeared that in an action for divorce an interlocutory decree had been entered in favor of Ella P. Smith and against Elmer L. Smith, her then husband directing the latter to pay her $50 per month for the support of their minor child, Rhea Smith. Thereafter the husband being in arrears on this obligation, the trial court found that he had deposited a trust deed which secured certain indebtedness to him in a named bank with a written order signed by him directing the bank to pay the monthly payments of $30, with interest, accruing from this trust deed to his daughter Rhea. The trial court then made an order that to secure the payments for the said daughter as they had been ordered in the divorce decree, the bank was required to hold this trust deed and not to deliver it to the father but only to deliver the payments due thereon in satisfaction of the amounts ordered for the support of the child and "to

hold said trust deed until the further order of the court".

Thereafter the defendant husband died without this order ever having been changed. Subsequently Edith Smith with whom Elmer had contracted a second marriage after being divorced from Ella, was by the probate court appointed Executrix of his last will and testament. Edith filed a petition in said probate court to have the whole estate left by Elmer set aside to her as not exceeding $2500. The only property left appellant was this trust deed which had not then been entirely liquidated. Ella and her daughter Rhea appeared in this proceeding and claimed that the order aforesaid created a lien upon the indebtedness secured by the trust deed to secure the amount due for Rhea's support during her non-age. The trial court overruled this contention and by order set off the indebtedness aforesaid to the second wife, Edith. An appeal from this order was taken by the mother, Ella.

Reversing the ruling below and holding that the order originally made by the court directing the trust deed indebtedness to be held to respond to the amount due for Rhea's support imposed a lien thereon and that it took priority over the subsequent order setting aside this property to the widow of the deceased, the appellate court remarked:

"The purpose of the order was to maintain the child during her minority and to compel such maintenance by the father. The necessity for the support of the minor is the same, whether the father be alive or dead. Having made provision for the support of the minor, which is at least partially adequate for her maintenance during her minority, is there any reason whatever why this support should cease on the death of the father, leaving property properly applicable for the payment of said support? No reason has been suggested to us and we know of none. Surely no obligation can exceed in importance that which the father

owes to his own offspring. It is true he assumed additional duties upon contracting a second marriage, but these are subordinate to those which he owed prior to his said marriage to support his own children.

"In other jurisdictions it has been held that the provision in a decree of divorce directing the father to pay certain amounts toward the support of his minor child is not discharged by his death." Citing cases.

The Newman vs. Burwell case was in many respects like the case at bar. There, however, the divorce was granted to the father and the custody of the child to the mother. Pursuant to a property settlement agreement, approved and confirmed in the divorce decree the father was to pay "until further order of the court" $50 per month to the mother for the support of the child. The father died having made no provision by will or otherwise for the minor child. The mother brought suit in equity to enforce the claim rejected by the executrices of his estate for an unpaid installment of the support money that had become due prior to his death and also for $7400 representing the alleged maximum amount necessary to discharge the monthly installments between the date of the father's death and the child's majority.

The Supreme Court of California reversed the judgment of the lower court which had sustained a general demurrer to the mother's complaint. The appellate court held that it was error to sustain a general demurrer where a portion of the claim was grounded upon installments that had become due prior to the father's death "for" said the court:

"it is elementary that a complaint is good against general demurrer if it sufficiently alleges facts warranting any form of relief. Cal. Trust Co. v. Cohn (Cal. Sup.) 7 P. (2d) 297".

In aid of the trial court, however, as the case necessarily required additional proceedings, it was in-

dicated that the question still to be solved was whether a decree entered in a divorce action requiring a father to pay "until the further order of the court" a certain monthly sum toward the minor child's support placed in the mother's custody was discharged by the father's death.

This question was answered by the reviewing court in the negative. After citing the cases of Murphy vs. Moyle supra, Stone vs. Bayley supra, Estate of Smith, 200 Cal. 654, 254 Pac. 567 hereinbefore reviewed, Myers vs. Harrington, 70 Cal. App. 680, 234 Pac. 412, the Maine case of Miller vs. Miller, supra, and Gainsburg vs. Garbarsky supra, this language was used leading to the court's final conclusion on the point:

"Without narrating the facts and discussing the holdings in each of the several cases just above cited, suffice it to say that they indubitably establish that a father's obligation to support his minor child, which obligation is fixed by a property settlement agreement and confirmed by a divorce decree, survives his death and becomes a charge against his estate for all sums accruing thereunder during the child's minority, and that an action, similar to the one here instituted, may be brought to establish the same as a valid and subsisting claim against the father's estate. It is true that in certain of the cited cases the father's obligation was to pay a designated sum monthly *during the minority* of the child, thus tending to irrefutably indicate that it was to survive the father, whereas the obligation here imposed was to continue 'until further order of court'. However, these same authorities recognize that in the absence of an expressed intention to limit such obligation to the lifetime of the father, the same will, and does, survive his death even under a decree imposing the same until 'further order of the court'. Stone v. Bayley, supra, page 822 of 134 P., 75 Wash. 184; Myers v. Harrington, supra, page 685 of 70 Cal. App., 234 P. 412; Miller v. Miller, supra. In the case last cited the decree merely provided, as here, for the father's payment of a specified sum quarterly

'till the further order of court,' and it was held that such obligation continued after his death and during the minority of the children. And rightfully so, for it is the solemn duty of every father to support his children during their minority, and if he fails to do so, every principle of justice demands that they be thus supported out of his estate.

"It is also true that in certain of the cases above cited the divorce decree, in addition to fixing the father's obligation toward his minor children, imposed a lien upon his property to secure the payment of the sums due thereunder. However, the cases recognize that a distinction founded in the giving or requiring of security can rest on no sound basis, inasmuch as the provision for security is a difference merely in circumstance, and not in principle. As stated in Stone v. Bayley, supra, 'it can hardly be contended that if there was no continuing debt there could have been a continuing lien.' We conclude, therefore, both upon reason and authority, that the existence of security is neither a controlling circumstance nor an essential prerequisite to a determination of the continuing character of the decedent's obligation."

We are satisfied that the trend of modern authority as illustrated by the cases we have examined, both those mentioned above and others which have come under our notice, requires us, as we think, properly to conclude that the first of the questions suggested at the outset of this discussion should be answered in the negative and the second query in the affirmative.

There remains the third question, viz., whether the amount due and to become due can be recovered in a lump sum in this case. As was adjudged in the Newman vs. Burwell decision supra, we think the judgment below should remain intact as to all sums due and unpaid at the time the mandate of this court reaches the district court. Relative to the sums thereafter to become due under the divorce decree pleaded in plaintiff's petition, we have this to say:

We note the disposition of a similar question in the Newman vs. Burwell decision which meets our approval especially in view of the similarity of the probate law of California with our own to which reference has already been made. In the case last cited the court further said:

"Assuming for present purposes that the plaintiff upon the trial of the cause establishes by competent evidence the allegations of her complaint, we perceive of no substantial objection to a decree directing the defendant executrices to pay into court a sum of money sufficient to meet the monthly installments of $50 each accruing between the time of decedent's death and the time when the child shall reach her majority, such sum to be paid over to the plaintiff in such amounts and at such times as the installments accrue. Section 953 of the Probate Code authorizes such a procedure and its provisions should be followed by the court below if upon the trial of the cause the plaintiff sufficiently establishes the allegations of her complaint. There should be credited as payments on said claims all sums paid to the plaintiff in the administration of the estate as family allowance for the support and maintenance of the minor child. In her complaint the plaintiff expresses a willingness that such amounts be so credited and that her claim be accordingly reduced."

Section 953 of the Probate Code of California mentioned in the last quoted excerpt from the opinion in the Newman case is practically identical with Section 6-2026 W. C. S. 1945 which reads thus:

"If there is any claim not due at the time of settlement, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established or absolute must be paid into the court, and there remain to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over or distributed as the circumstances of the estate require. If any creditor whose claim has been allowed, but is not yet due, appears and assents to a deduction therefrom

of the legal interest for the time the claim has yet to run, he is entitled to be paid accordingly. The payments provided for in this section are not to be made when the estate is insolvent, unless a pro rata distribution is ordered."

We have no doubt that having in mind what has been said above and this statute embodied in our own probate code, the district court will have no difficulty in appropriately modifying the judgment at bar to conform with the law last cited and the views we have expressed herein.

Appellant finally urges that the petition of the plaintiff does not plead the entry of the divorce decree and that consequently this omission makes the pleading fatally defective. The contention is without merit. When the decree of divorce was rendered it became the mandatory duty of the clerk of the district court to properly enter it in the journal of the court. Sections 3-207, 3-3608 W. C. S. 1945. We have no doubt that that was done, for amnia rite acta praesumunter —all things are presumed to have been rightly done. So this court said in State Ex rel. Bennett vs. Barber, 4 Wyo. 56, 32 Pac. 14:

"It is not necessary to allege and show affirmatively matters of fact which the law presumes from other facts, which are alleged."

We may note also that 1 Freeman on Judgments (5th Ed.) 104, Section 59 declares:

"In view of the presumption of the performance of official duty, after the lapse of a reasonable time from the signing and filing by the court of a form of decree, it will be presumed that it has been entered of record by the clerk, in the absence of any showing to the contrary."

We have already indicated that on appeal under the circumstances here presented we are to draw all reasonable inferences from the facts pleaded and it will

be remembered that the plaintiff's petition pleads that the judgment was "rendered". See also Hahn vs. Citizens State Bank, 25 Wyo. 467, 474, 171 Pac. 889.

The judgment appealed from in the case at bar will be affirmed as to that portion which is due as above considered with directions to the district court to modify its judgment as to that portion not yet due and to proceed in accord with Section 6-2026 quoted above and the views herein expressed.

*Affirmed* In Part With Directions To Modify In Part.

KIMBALL, J. and BLUME, J. concur.

## ON PETITION FOR REHEARING

(March 15th, 1949; 203 Pac. (2d) 952)

For former opinion, see 199 P. 2d 840.

R. G. Diefenderfer, of Sheridan, for appellant.

## OPINION

RINER, Chief Justice.

A petition for rehearing has been filed in this case. As so often happens in such matters, arguments are reiterated to which we have, prior to announcing our conclusions and the reasons therefor in the opinion on file herein, given careful consideration and have felt obliged to reject. Counsel for appellant insists that his interpretation of the law on the question whether a divorce decree directing that a husband should pay a certain sum per month to the wife for the support of a minor son of the parties "until the further order of the court" terminated on the death of the husband and did not operate as a proper claim against his estate, should be adopted by this court rather than those interpretations announced by the editorial writers on the point in L. R. A., N. S., A. L. R. and Am. Juris. and the appellate court decisions we have cited. But our examination of the case law on these points has led us to the conclusion that we should agree with them and not with him.

Counsel lays stress on the fact that in some of the cases cited in the original opinion herein, the court order operated to establish a lien upon the husband's property or a bond or security was given by the husband to secure the payment of support money for his minor child. It was pointed out in the quotation made in the original opinion from the case of Newman vs. Burwell, 216 Cal. 608, 15 P. 2d 511 that "both upon reason and authority that the existence of security is neither a controlling circumstance nor an essential prerequisite to a determination of the continuing character of the decedent's obligation" and also that as said in Stone vs. Bayley, 75 Wash. 184, 134 Pac. 820 "it can hardly be contended that if there was no continuing debt there could have been a continuing lien". In Miller vs. Miller, 65 Maine 484, we find the court saying:

"The question is whether a decree of this court, made in a divorce suit, that the mother shall have the care and custody of the minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of court, is discharged by the father's death.

"We think it is not. The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. If, from hostility to the mother, or other cause, there is danger that the father will disinherit his children, and thus leave them to be supported by their mother without any aid from his estate, a decree may very properly be made for their support that shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court. And if there is danger that the father will squander his property, or convey it away, so that none will be left for the decree to operate upon, he may very properly be required to give security."

These views the Supreme Court of California in the

Newman vs. Burwell Case supra not only approved but followed.

Counsel insists that the case last mentioned was an "equity action" in California and that that fact makes it distinguishable from the case at bar. He evidently has overlooked that since prior to statehood there has been a Wyoming statute in existence reading:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing are abolished, and in their place there shall be hereafter but one form of action, which shall be called a civil action." Section 3-301 W. C. S. 1945.

In such an action both equitable and legal principles alike are given effect as the facts may require. Novosel vs. Sun Life Assur. Co., 49 Wyo. 422, 55 Pac. 2d 302.

The case of Robinson vs. Robinson, ......W. Va......., 50 S. E. 2d 455 has come under our notice. The opinions therein have been made available for examination and study in the advance sheets of the Southeastern Reporter, Second Series, No. 5 under date of December 30, 1948. The majority opinion appears to have approved the ancient, severe, and unsuited to modern life, common law view that no duty can be imposed even by court decree as in the case at bar, upon a deceased father's estate to support his minor child. The opinion of the majority of the court in the Robinson case advances no new reasoning and which was not before us when the original opinion herein was prepared and filed. Referring to some of the decisions which have reached a conclusion opposed to its views and in an evident attempt to distinguish them, the majority opinion states: "Some of these cases are apparently based upon voluntary contracts entered into by the husband and carried into the decree granting the

divorce and custody of the child." If that fact constitutes a distinguishing element, then the case at bar is distinguished from the Robinson case for we pointed out in the original opinion that it was alleged in plaintiff's petition and admitted by defendant's demurrer thereto, that the decree of divorce was "rendered in accordance with an express agreement between the said parties to the action (for divorce) and said monthly payments to continue until further order of the court". However, as indicated in the dissenting opinion in the Robinson case, it seems to have been overlooked by the majority that in that case, too, the voluntary agreement of the husband and father to pay support money for the children was "recited in and 'carried into' the decree of" the court of common pleas.

The Robinson decision appears to be in large measure rested upon the reasoning and views expressed in the cases of Blades vs. Szatai, 151 Md. 664, 135 Atl. 841 and Guinta vs. Lo Re, ......Fla......., 31 So. 2d 704. Concerning these cases and the majority opinion in the Robinson case, the dissenting opinion therein has this to say:

"The Blades case and the Guinta case, however, seem to be applicable to the case at bar, and they adopt the minority rule. The decision in each case was by a divided Court. In the Blades case, one judge of the five judge Court dissented; and in the Guinta case four judges concurred in the majority opinion and the chief justice and one judge dissented. Those two cases, adhered to by the majority, in the face of the applicable statutes of this State, are contrary to the prior decisions of this Court, the views expressed in standard treatises and texts and the clear weight of authority of decisions of the Courts of last resort in other jurisdictions, to all of which I have referred and from a number of which I have quoted at length; and to me they appear to constitute the feeble and ephemeral legal foundation upon which the conclusion of

the majority in this case is based. It has based its holding, not upon the rock of sound judicial pronouncements of this Court, and numerous courts of recognized standing in other jurisdictions, which constitute the decided weight of authority, but upon the sands of a small minority which is divided within its own ranks."

We are convinced that the views expressed in the original opinion are both sound in law and the results reached are just and fair on the facts. The petition for rehearing should be denied.

*Rehearing Denied.*

KIMBALL, J. and BLUME, J. concur.